UNITED STATES of America,
Plaintiff-Appellee,

v.

Emile Mitchell ROBIN,
Defendant-Appellant.

No. 82–1162.

United States Court of Appeals,
Fifth Circuit.

Nov. 24, 1982.

John M. Pickney, III, Joseph G. Street, San Antonio, Tex., for defendant-appellant.

Sidney Powell, Steven C. Hilbig, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Emile Mitchell Robin appeals from his conviction for threatening the life of the President in violation of 18 U.S.C. § 871. Appellant raises three issues on appeal: 1) whether the trial court erred in refusing to order the government to elect one of the threats summarized in a one-count indictment as the basis of its prosecution; 2) whether the trial court erred in failing to dismiss the indictment or arrest the judgment because of lack of clarity in the indictment, and 3) whether the trial court erred in refusing to grant a mistrial following a government witness's testimony that violated a motion in limine. Finding no merit in any of appellant's claims, we affirm.

## I.  FACTS

At approximately 9 p.m. on November 14, 1981, Don Dailey, the Assistant City Editor for the San Antonio Express, received a phone call from an unidentified man who said, "I understand the President is in South Texas shooting turkeys this weekend. I want you and anyone else who cares to know that I will take care of the big turkey before he leaves town. Rest assured I will shoot him." About 9:30 p.m. that same evening, a man telephoned Richard Eckhardt, a San Antonio physician and said, "Richard, How would you feel about joining me and about 135 other fellows at that turkey shoot down south of here and shooting the President?" The caller stated that he had also called the newspaper. Shortly after midnight on November 15, 1981, Neville Murray, a San Antonio psychiatrist received a message from his answering service to call appellant. When he did so, appellant identified himself and during the conversation stated that he was trying to get a party together to go down south to kill the President. When asked by Murray why he wanted to kill the President, appellant replied, "I hate the son-of-a-bitch." Dailey, Eckhardt and Murray each called the Secret Service, and an agent arrested Robin. After a trial before a jury, Robin was convicted, given a two-year suspended sentence, and placed on probation.

## II. THE INDICTMENT

The indictment charged Robin as follows: On or about the 14th day of November, 1981 in the Western District of Texas, Defendant EMILE MITCHELL ROBIN willfully and knowingly did make an oral threat to take the life of, and to inflict bodily harm upon, the President of the United States, in the verbal use of threatening language, substantially summarized as follows: "that he (EMILE MITCHELL ROBIN) was trying to get a party together to go kill Reagan. That he (EMILE MITCHELL ROBIN) knew the President was in Texas, turkey hunting, and that he (EMILE MITCHELL ROBIN) would take care of the big turkey tomorrow," in violation of Title 18, United States Code, Section 871.

Appellant argues that the inclusion of more than one threatening statement in a single count renders the indictment duplicitous. "Duplicity" is the joining in a single count of two or more distinct and separate offenses. C. Wright, *Federal Practice and Procedure: Criminal* § 142 at 469.

We find that the threatening statements could be consolidated in a single count because they were part of a single, continuing scheme that occurred within a short period of time and that involved the same defendant. The consolidation is proper and thus the indictment is not duplicitous notwithstanding that each statement alone might constitute an offense. *See United States v. Alsobrook,* 620 F.2d 139 (6th Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980) (consolidation in one count of six trips in interstate commerce in violation of Travel Act proper). *See also United States v. Girard,* 601 F.2d 69 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979) (consolidation in one count of unlawful sale and receipt of records of four indi-

viduals in violation of 18 U.S.C. § 641 proper); *United States v. Pavlovski,* 574 F.2d 933 (7th Cir.1978) (consolidation in one count of charges of embezzlement by presenting forged checks to bank and by converting cash dues and initiation fees belonging to union proper); *Cohen v. United States,* 378 F.2d 751 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967) (consolidation in one count of series of wagering-related telephone calls over short period to two individuals proper).

The acts of the defendant need not be separated into separate counts when they represent a single, continuing scheme if the following dangers are not present: 1) the defendant may not be notified of the charges against him, 2) he may be subject to double jeopardy, 3) he may be prejudiced by evidentiary rulings during trial, and 4) he may be convicted by less than a unanimous verdict. *See Alsobrook,* 620 F.2d at 142. These dangers are not present on this record. First, the indictment accused appellant of knowingly and willfully threatening the President's life. Robin could not possibly have construed the indictment to allege some other offense and thus have been hampered in the preparation of his defense. Second, the indictment does not expose appellant to the risk of double jeopardy. In *United States v. Marable,* 578 F.2d 151 (5th Cir. 1978), this court set forth the test for determining the question of double jeopardy: whether the proof for charges in a second indictment would have been admissible in the first trial and would have supported a conviction. Because the specific threats summarized in the indictment were introduced into evidence, none could be used as the basis of a future indictment.[1] Third, appellant has not shown that the indictment resulted in prejudicial evidentiary rulings during trial.[2] Finally,

---

1. Appellant asserts that the fact that his statement to Murray, "I hate the son-of-a-bitch," was not charged in the indictment subjects him to the possibility of double jeopardy, a danger of a duplicitous indictment. A statement not contained in the indictment cannot support an attack that the indictment is duplicitous. Nonetheless, as the uncharged statement was

admitted into evidence and could have supported the conviction, *Marable* likewise precludes its use as the basis for a future indictment.

2. Appellant claims that the court should have given a "similar acts" instruction during trial regarding the uncharged statement, *see* note 1

there is no danger that because of more than one alleged threat being charged in the indictment, Robin was convicted by a nonunanimous jury verdict. The court instructed the jury on the necessity of a unanimous verdict. Moreover, there is no danger that although the jurors found Robin guilty, they may not have agreed as to all the threats made. Appellant did not deny that he did the acts charged, but only that he had the requisite mental state. As the court in *United States v. Pavlovski*, 574 F.2d 933 (7th Cir. 1978), recognized:

> [I]n the case at bar the defense did not dispute that [appellant] did all the acts charged, which were proved beyond peradventure, but denied only that he possessed the necessary mental state required for violation of the statute. There was therefore no possibility of prejudice through lack of unanimity.

*Id.* at 936.

Appellant's reliance on *Bins v. United States*, 331 F.2d 390 (5th Cir. 1964) fails to place *Bins* in its factual context. In *Bins*, this court declared duplicitous a single-count indictment alleging submission of two false documents in connection with a Federal Housing Administration loan in violation of 18 U.S.C. § 1010 (1976). That statute made the utterance of each false statement or each document a crime. *See* 331 F.2d at 392 n. 2. Under 18 U.S.C. § 871, it is not clear from the legislative history or judicial interpretation that each statement in a continuing scheme to threaten the life of the President is a separate offense. As a deter-

mination that separate offenses are involved would make possible multiple punishment for the same conduct, unless Congress has indicated clearly that it contemplates separate crimes, doubt should be resolved "against turning a single transaction into multiple offenses...." *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Id.*[3] Thus, the district court did not err in refusing to require the government to elect one statement as the basis of the one-count indictment.

■ Even if the indictment were considered duplicitous, appellant must show that he was prejudiced by its duplicity. In *United States v. Salinas*, 654 F.2d 319, 326 (5th Cir. 1981), we held that "a duplicitous indictment and an erroneous denial of a motion to elect are not reversible error where the defense preparation has not been affected and the jury's verdict is unambiguous." As we pointed out above, *see* pages 378–379 *supra*, Robin has not demonstrated prejudice here.

■ Appellant also contends that the indictment does not sufficiently allege the essential elements of the offense because it only gives a "substantial summary" of the threatening statements. This court in *United States v. Rogers*, 488 F.2d 512, 514 (5th Cir. 1974), observed that the essential elements of the offense are (1) a true threat

---

*supra*. In the charge to the jury, the court instructed them as follows:

> There was testimony by certain witnesses as to alleged threats which are not charged in the indictment. Such alleged threats not charged in the indictment may not be considered by the jury in determining whether the defendant made the statements which were in fact charged in the indictment, nor may such alleged threats not charged be considered for any other purposes, unless the jury first finds that the other evidence in the case standing alone establishes beyond a reasonable doubt that the statements charged in the indictment were made by the defendant.
>
> If the jury should find beyond a reasonable doubt from such other evidence in the case

that the defendant made the statements as charged in the indictment, then the jury may consider the alleged threats which were not charged in the indictment in determining the state of mind or intent with which the defendant made the statement as charged.

That instruction was sufficient to prevent prejudice.

3. In *United States v. Carvin*, 555 F.2d 1303 (5th Cir.1977), this court upheld delineation of separate threatening statements in three counts, but in that case the threats were against three people, President Gerald Ford, Vice President Nelson Rockefeller and Presidential Candidate Ronald Reagan. This court thus concluded that there were three offenses.

(2) knowingly and intelligently made. To allege a true threat, the exact wording of the threatening statement need not be set out in the indictment. If, as here, the indictment sets forth the elements of the offense so as fairly to apprise the defendant of the charges against him and does not expose him to the risk of double jeopardy, it is sufficient. *See United States v. Mouton,* 657 F.2d 736, 739 (5th Cir. 1981). In *United States v. Carrier,* 672 F.2d 300 (2d Cir. 1982), a presidential threat case, the Second Circuit, rejecting an argument that the indictment must include a description of the factual context within which the utterance occurred, approved an indictment that set ·out the threats "substantially as follows." *Id.* at 302 n. 3. We likewise find the indictment sufficient in this case.

### III. THE CHALLENGED TESTIMONY

■ Appellant further complains of the trial court's failure to grant a mistrial following the testimony of government witness Dr. Betty Lou Schroeder, a psychologist who had examined Robin. Dr. Schroeder was subject to a motion in limine that prevented any testimony regarding "admissions involving the crime for which the Defendant Robin is charged," that Robin may have made during the doctor's examination. During redirect examination, government counsel presented a hypothetical to Schroeder, inquiring whether a person under the influence of alcohol in a factual situation such as that in the record could have formed the specific intent to make threats against the President. On recross, defense counsel asked the witness to consider the government's hypothetical without including the element of alcohol consumption. Counsel questioned: "He is stone sober, okay, and he just commences to pick up the phone and make these phone calls. That would be in your estimation normal behavior for an individual such as Mr. Robin, based upon your evaluation of him?"

Dr. Schroeder answered:

4. Having admitted making the threatening statements, appellant emphasizes that the only

It would depend. I think under the best of circumstances—and I put emphasis on the fact that he hadn't had anything to drink for six months, as you stated—I think the probability would be that he would not do it. He would have better judgment, but on the other hand, it would depend upon the degree of anger that he felt because his girlfriend might possibly be losing her Social Security check or whatever other variables.

On redirect, government counsel questioned, "Doctor, you mentioned something about a girlfriend losing benefits. Was that a reason stated to you as to why he made the phone call?" At that point, before the witness answered, defense counsel, citing the motion in limine, objected and moved for a mistrial. After extensive interchange, the trial court denied the motion.

Relying on *United States v. Escamilla,* 666 F.2d 126 (5th Cir. 1982), appellant argues that he was prejudiced by this inadmissible evidence regarding motive because it was the only evidence indicating an explanation of his conduct consistent with his being sane.[4] The *Escamilla* court stated:

> To require a new trial, the prejudicial effect of improper matter, viewed in the context of the particular trial, must not be overwhelmed by evidence of guilt. A significant possibility must exist that, considering the other evidence presented by both the prosecution and defense, the . . . statement had a substantial impact upon the verdict of the jury.

*Id.* at 126 (quoting *United States v. Arenas-Granada,* 487 F.2d 858, 859 (5th Cir. 1973). In *Escamilla,* this court decided that a statement by a government agent regarding the arrest of appellant's brother at their parents' home had a substantial impact on the jury so as to warrant a new trial. As this court recognized, the government was attempting to prove that the parents' home was the drop-off point for the exchange of heroin between Escamilla and his mother-

issue at trial was his sanity.

in-law. There was no direct evidence to establish that fact. In that context, the government witness's statement was "precisely the testimony needed" and "was clearly a key element in linking Escamilla to the sale and exchange of the heroin." *Id.* at 129.

Contrary to the situation in *Escamilla,* in this case there is other significant evidence of guilt so that the likelihood that the improper testimony had a substantial impact on the jury is reduced. Evidence of motive was introduced by Floyd Lee, a special agent with the United States Secret Service. He testified that after arresting Robin, he asked him why he threatened the President, and Robin responded that he was unhappy with the President because of the current economic situation. Dr. Schroeder's statement must be juxtaposed with this comment as well as appellant's statement that "I hate the son-of-a-bitch." Even if there were error in the admission of the psychiatrist's statement, it was harmless beyond peradventure because of this other overwhelming evidence of appellant's motive.[5]

The judgment of the trial court is AFFIRMED.

---

**5.** Thus, whether or not appellant's counsel was responsible for the introduction of the evidence, *see United States v. Doran,* 564 F.2d 1176, 1177 (5th Cir.1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978), its admission was not prejudicial.