804 P.2d 776

STATE of Arizona, Appellee,

v.

Jack Emerson SCHROEDER, Appellant.

No. 1 CA–CR 88–924.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 13, 1990.

Review Denied Feb. 20, 1991.

48

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

Defendant was tried by a jury and convicted of sexual abuse, a class five felony. He was sentenced to two years probation. Defendant raises two issues in this appeal: (1) that prosecutorial misconduct deprived him of a fair trial; and (2) that the indictment was duplicitous.

## FACTS

Four witnesses testified at trial: the victim, the victim's mother, a police officer, and the defendant, who is the victim's grandfather. The victim testified that one evening the defendant came over to her family's home and invited her to dinner. She accepted his invitation and while the two were walking to defendant's car, de-

fendant put his arm around his grand-daughter and touched her breast. While driving to the restaurant, defendant touched her pubic area over her clothing. Upon arriving at the restaurant, defendant touched his granddaughter's breasts and tried to kiss her on the lips. She ran from the car but defendant followed her and grabbed her buttocks. The two then entered the restaurant. The granddaughter explained that she did not think that her grandfather would continue this behavior, so she remained with him at the restaurant and they had dinner.

Upon leaving the restaurant, as they were walking to the car, defendant again grabbed his granddaughter's buttocks and touched her breasts. Inside the car, defendant forcibly tried to kiss his granddaughter and feel her pubic area. The granddaughter testified that after they arrived home, her grandfather "tried to kiss [her], but he kissed [her] on the lips and tried to get his hands down [her] pants and was kind of feeling [her] up." It was at this point, according to the granddaughter, that she became convinced that her grandfather's actions were intentional and she ran from the car into her house.

The victim was very upset and told her boyfriend what happened. Later, she telephoned her mother and told her what had happened. Her mother became very angry and telephoned the defendant. She "told him [she] had just talked to [the grand-daughter], and [she] asked him what in the hell he thought he was doing." He laughed, and she "slammed the phone down." The mother contacted the police, and Officer Mary Ball went to the family home and interviewed the granddaughter.

At defendant's first trial, the mother, contrary to court order, testified that she had been molested by the defendant when she was a teenager and that she had mentioned that fact during the telephone call to defendant. A mistrial was declared. After a hearing on defendant's motion to dismiss prior to the retrial, the trial court found that this testimony had been inadvertent and that there had been no prosecutorial misconduct.

At defendant's second trial, Officer Ball testified about her experience and qualifications concerning sexual abuse victims. When she was specifically questioned about this case, the following exchange occurred:

Q. [The Prosecutor] And, you proceeded to interview her?

A. [Officer Ball] Yes.

Q. Did she seem willing to talk to you?

A. She kind of hesitated. She looked like she was embarrassed to talk about the incident.

Q. Did she appear to you to be upset?

A. Yes.

Q. And did she appear to you to be telling the truth?

A. Yes.

DEFENSE COUNSEL: Your Honor, I object.

THE COURT: Sustained.

Defense counsel then moved for a mistrial on the basis of *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986). After considering counsel's motion, the trial court denied it.

THE COURT: What I'm going to do, I'm going to deny the motion for mistrial....

Because it's such an obviously improper question, I'm going to advise the jury to disregard the last question, that it shall be stricken from the evidence, not to consider the answer thereto.

And, I do not feel that manifest injustice would be created by proceeding to trial nor that this constitutes the kind of prejudice that would really justify a mistrial.

The trial court then ordered the testimony stricken and instructed the jury:

THE COURT: Ladies and gentlemen, I am going to instruct you at this time to disregard completely the last question, the answer provided to that question, they're being stricken as evidence in this trial.

The issue of credibility of a witness is solely and completely an issue for the jury to determine, and you are so instructed.

No further mention was made of this matter.

Defendant testified at trial and denied ever touching his granddaughter's breasts. He also denied that he had made any sexual advances whatsoever during the time that he and his granddaughter had been together.

The case was submitted to the jury, and a verdict of guilty was returned. Prior to sentencing, defendant moved for a new trial on the grounds that the verdict was contrary to the weight of the evidence, that the testimony by Officer Ball that she believed the granddaughter's allegations were truthful denied him a fair trial, and that he was forced to proceed to trial on a duplicitous and, hence, fatally defective indictment. The motion was denied. Defendant was then sentenced. From his conviction and sentence, defendant timely appealed.

### OFFICER BALL'S TESTIMONY

On appeal, defendant claims that the prosecutor engaged in flagrant misconduct when he asked Officer Ball to evaluate the victim's credibility. That obviously improper conduct, he asserts, should have resulted in a mistrial. Defendant also argues that Officer Ball improperly testified about the victim's credibility. Furthermore, because there was no extrinsic evidence of the alleged sexual abuse, defendant claims the testimony was reversible error. We address defendant's arguments separately.

1. *Testimony on the Victim's Credibility*

■ The Arizona Supreme Court has held that an expert witness may not give an opinion as to the credibility of a victim. *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986). This is so because generally "the jury can evaluate credibility as well as an expert" and therefore such an opinion "usurps the function of the jury." *Moran*, 151 Ariz. at 382, 728 P.2d at 252; *Lindsey*, 149 Ariz. at 476, 720 P.2d at 77. Other jurisdictions are in accord. *See, e.g., Thompson v. State*, 769 P.2d 997 (Alaska App.1989); *People v. Gaffney*, 769 P.2d

1081 (Colo.1989). Rendering such an opinion may result in reversal. *Lindsey, supra; Moran, supra.*

In *Lindsey*, the court held that direct testimony on the victim's credibility should not have been admitted. 149 Ariz. at 477, 720 P.2d at 78. In analyzing whether the error was reversible, the court noted that "[s]ince [the accused's] guilt or innocence . . . inherently turned on the question of the [victim's] credibility," the error was not harmless. *Id.*

Subsequently, in *Moran*, the Arizona Supreme Court again found that admission of an expert's personal opinion that the victim was telling the truth was reversible error. 151 Ariz. at 386, 728 P.2d at 256. In *Moran*, as in *Lindsey*, the court's conclusion was based on the fact that "[n]either physical evidence nor any other direct evidence showed that Moran [had] committed the crime." *Id.*

As in *Lindsey* and *Moran*, defendant here argues that, because no extrinsic evidence of his guilt was presented at trial, Officer Ball's statement constituted reversible error. We disagree and find *Lindsey* and *Moran* to be distinguishable on several grounds.

First, in both *Lindsey* and *Moran*, extensive testimony, specifically designed to boost the victim's credibility, was admitted at trial. Here, the testimony was but a single reference by the investigating officer that the victim appeared to be telling the truth during the interview. In addition, although Officer Ball had experience in dealing with sexual abuse victims, she was called to testify, not as an expert, but in her capacity as the investigating officer in the case. In this sense, no "expert" testimony was offered to convince the jury that the victim was telling the truth. Rather, this evidence was offered in the context of describing the victim's demeanor during the interview.

The most significant difference, however, is that while in *Lindsey* and *Moran* the improper testimony was admitted at trial, here, defense counsel's objection was sustained and the jury was admonished not to

consider either the question or the answer. In addition, the trial court instructed the jury that it alone was the judge of witness credibility. No further testimony as to the victim's credibility was offered throughout the remainder of the trial.

Thus, although the question and answer were improper, we find that any prejudice was cured by the court's admonition and refusal to admit the evidence and by its subsequent instruction to the jury regarding its role in determining the credibility of witnesses. We therefore find no error.

### 2. *Prosecutorial Misconduct*[1]

■ At trial, defendant failed to raise the issue that the prosecutor's improper question constituted deliberate prosecutorial misconduct. Rather, defense counsel's objection and motion for mistrial were based solely on the Arizona Supreme Court's holding in *Lindsey*. In addressing defendant's objection, the trial court found that the testimony had been "inadvertent." Defendant did not contest this finding at trial nor did he raise the issue of deliberate prosecutorial misconduct in his motion for new trial. Therefore, absent error of fundamental proportion, defendant may not raise the issue of deliberate prosecutorial misconduct for the first time on this appeal. *State v. Holder*, 155 Ariz. 83, 85, 745 P.2d 141, 143 (1987).

■ Our review of the record reveals no fundamental error here. Error is fundamental only if it raises a concern that the defendant may not have received a fair trial. *State v. Rankovich*, 159 Ariz. 116, 121, 765 P.2d 518, 523 (1988). Thus, even if prosecutorial misconduct could be shown, declaration of a mistrial would be appropriate only if that misconduct could not be cured by any other means. *Pool v. Superior Court*, 139 Ariz. 98, 109, 677 P.2d 261, 272 (1984). Furthermore, the decision to grant or deny a motion for mistrial is within the sound discretion of the trial judge, and absent a clear abuse of that discretion, we will not overturn his decision on appeal. *State v. Koch*, 138 Ariz. 99, 101, 673 P.2d 297, 299 (1983).

■ In this matter, the trial court immediately admonished the prosecutor and instructed the jury to disregard both the improper question and the answer. We believe this was an adequate remedy and defendant therefore was not denied a fair trial. Thus, since there was no fundamental error, defendant has failed to preserve this issue for appeal.

### DUPLICITOUS INDICTMENT

■ An indictment which charges two or more distinct and separate offenses in a single count is duplicitous. C. Wright, *1 Federal Practice and Procedure: Criminal 2d* § 142 at 469 (1982). Since Arizona law requires that each separate offense be charged in a separate count, an indictment which charges more than one crime within a single count may be dismissed as duplicitous. *Spencer v. Coconino County Superior Court, Div. 3*, 136 Ariz. 608, 610, 667 P.2d 1323, 1325 (1983); Rule 13.3(a), Arizona Rules of Criminal Procedure; *see also Baines v. Superior Court*, 142 Ariz. 145, 151, 688 P.2d 1037, 1043 (App.1984). The purpose behind the prohibition of duplicitous indictments is the avoidance of the following dangers: (1) failure to give the defendant adequate notice of the charges against him; (2) exposure of the defendant to the possibility of double jeopardy; and (3) conviction of the defendant by less than an unanimous jury verdict. *Spencer*, 136 Ariz. at 610, 667 P.2d at 1325; *see also United States v. Robin*, 693 F.2d 376, 378 (5th Cir.1982).

In the indictment at issue here, defendant was charged with one count of sexual abuse allegedly occurring on August 31, 1986. At trial, however, the victim testified to seven separate acts of sexual abuse. Thus, defendant argues, this indictment was duplicitous because it did not specify which act of conduct constituted that one criminal charge. Furthermore, according to defendant, there is no way of knowing whether the jury reached an unanimous verdict as to any one of the alleged inci-

---

**1.** Counsel for the state on appeal did not repre-
sent the state at trial.

**52**

dents and, therefore, the indictment must be dismissed pursuant to the Arizona Supreme Court's holding in *Spencer, supra.*

The defendant in *Spencer* had been charged with one count of incest and one count of child molestation, both counts involving the defendant's daughter. However, the facts giving rise to these two counts involved over one hundred separate incidents of sexual contact between the defendant and his daughter occurring over a period of 13 months. On special action review, the Arizona Supreme Court held that each incident constituted a separate offense and that the inclusion of these separate offenses under one count was duplicitous and improper. 136 Ariz. at 610, 667 P.2d at 1325. The court therefore dismissed the prosecution without prejudice. *Id.* at 611, 667 P.2d at 1326.

Relying on *Spencer,* defendant argues that, because of the duplicitous indictment, he is automatically entitled to a judgment of acquittal. We disagree.[2]

■ Preliminarily, we note that the rules involving prohibition against duplicity are rules of pleading which go to the manner in which charges are to be joined or separated. *Reno v. United States,* 317 F.2d 499, 502 (5th Cir.1963), *cert. denied,* 375 U.S. 828, 84 S.Ct. 72, 11 L.Ed.2d 60 (1963); *Wright, supra,* § 142 at 474–75. Failure to properly plead is not fatal to an indictment or information, and dismissal is not required unless the defendant has actually suffered some prejudice. *United States v. Droms,* 566 F.2d 361, 363 n. 1 (2d Cir.1977); *Trounce v. State,* 498 P.2d 106, 111 (Alaska 1972); *Robin,* 693 F.2d at 379; *Wright, supra.*[3] Thus, the question we must determine is whether the defendant in this case has in fact been prejudiced by the form of the indictment with which he was charged.[4] We turn now to that question.

*1. Adequate Notice*

■ The indictment at issue here accused defendant of sexual misconduct with a minor. Defendant could not possibly have construed the indictment to allege some other offense. Furthermore, defendant had undertaken discovery and he was not in doubt as to the specifics of the acts to which the indictment related. Nor does he maintain to the contrary. Thus, there was no danger that he lacked adequate notice of the charge against him nor that he was hindered in preparing his defense.

*2. Ability to Plead Double Jeopardy*

■ Double jeopardy will bar a second prosecution if the evidence necessary to support a second conviction was admissible and would have supported a conviction in the first prosecution. *United States v. Marable,* 578 F.2d 151, 153 (5th Cir.1978). Here the specific acts summarized in the indictment were introduced into evidence at trial. Defendant, therefore, can never again be prosecuted for any of these incidents. *Robin,* 693 F.2d at 378. Thus, defendant has not been prejudiced on double jeopardy grounds.

*3. Non–Unanimous Jury Verdict*

The only issue remaining is whether the jury's verdict was unanimous, given the possibility that all of the jurors might agree that some acts of fondling had occurred, without unanimously agreeing

---

**2.** The underlying factual situations in *Spencer* and in this case are markedly different, the incidents at issue in *Spencer* occurring over a period of 13 months, those at issue here occurring over a span of only 1–2 hours. Thus, it is questionable whether *Spencer* disposes of the state's contention that, pursuant to *State v. Via,* 146 Ariz. 108, 704 P.2d 238 (1985), these separate incidents were merely part of a large scheme constituting one count of sexual abuse. Nevertheless, because we find no prejudice to defendant, we dispose of the issue on defendant's contention rather than on the *Via* rationale.

**3.** For example, on special action review in *Spencer,* although the court dismissed the case, it did so without prejudice and, on remand, therefore, the state was free to refile each alleged incident of abuse under separate specific counts.

**4.** We acknowledge that the word "duplicitous" is somewhat imprecise as pointed out by the concurring opinion. We use it here to describe the evil of charging more than one crime in a single count or charging what can be multiple counts of the same crime in a single count.

upon the specific acts of fondling. This thorny aspect of duplicitous indictments has received much judicial attention, particularly in sex-related cases and especially in California. *See, e.g., People v. Winkle,* 206 Cal.App.3d 822, 253 Cal.Rptr. 726 (1988); *People v. Schultz,* 192 Cal.App.3d 535, 237 Cal.Rptr. 513 (1987), and cases cited therein. California, in fact, has adopted a rule whereby the evil of duplicitous indictments is averted by either requiring the prosecution to elect which act it relies upon for conviction or by the court's instructing the jury that it must unanimously agree that the defendant committed the same specific criminal act. *People v. Gordon,* 165 Cal. App.3d 839, 853, 212 Cal.Rptr. 174, 183 (1985). Although such a procedure was not followed here, we believe the error may not be prejudicial because only if the jury unanimously accepted the victim's version of the events could they find defendant guilty of sexually abusing her. A case illustrating this situation is *People v. Winkle, supra.* The defendant in *Winkle* was charged in one count with committing a lewd act upon a minor. However, the alleged acts were numerous and had occurred over a considerable period of time. At trial, the child testified that the acts had occurred. The defendant denied their occurrence, but offered revenge on the part of the child and her mother as a possible motive. The court noted:

> Whether or not the jury accepted appellant's defense in this case comes down to a question of credibility—whether the jury believed [the child] or appellant. Appellant offered no alibi or identity defense.

206 Cal.App.3d at 829, 253 Cal.Rptr. at 730. Under these circumstances, the *Winkle*

court concluded that, because the defendant's only real defense was his credibility, the jury's verdict of guilt indicated that they unanimously believed the child and did not believe the only defense offered. *Id.*

We believe this same reasoning applies here. The acts alleged by the victim occurred over a relatively short period of time during one evening. All of the acts were basically the same—fondling or attempted fondling. Defendant's only defense was that the acts did not occur. Thus, the jury was left with only one issue—who was the more credible of the only two witnesses to the alleged acts? As in *Winkle,* the jury's verdict here implies that it did not believe the only defense offered. *Id.; see also People v. Deletto,* 147 Cal. App.3d 458, 195 Cal.Rptr. 233 (1983), *cert. denied,* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984). Furthermore, we believe that, under this analysis, the possibility that the jury might have found that some but not all of the alleged acts occurred is irrelevant so long as they unanimously agreed that the child had been sexually abused by defendant.[5]

Thus, under the circumstances in this case, we find defendant was not prejudiced by the fact that the indictment charged only one rather than several counts of sexual abuse. Accordingly, we affirm.

VOSS, P.J., concurs.

KLEINSCHMIDT, Judge, concurring.

I concur with the majority because I believe it highly probable in this particular case that the jury's verdict was unanimous. I write separately to point out a technical difference I have with the majority, and to

---

5. An argument further supporting a finding that defendant was not prejudiced by the indictment is that since each separate act of sexual abuse could have been the subject of a separate count, defendant could have been subjected to the possibility of several felony convictions with multiple penalties. Instead, he faced only one such conviction and penalty. A case bolstering this argument is *Cohen v. United States,* 378 F.2d 751 (9th Cir.1967). In *Cohen,* several wagering telephone calls had been made over a relatively short period of time. Even though each call could have been the subject of separate counts

with the possibility of multiple penalties, the defendant was charged in count one with but a single offense of knowingly transmitting wagering information. The court found that the indictment "was not rendered duplicitous ... even though each [call] might have been alleged as a separate violation." *Id.* at 754. The court commented further:

> The government is to be commended rather than criticized for treating all such calls for the same purpose during a brief period as one crime subject to a single statutory penalty.

*Id.* This same observation could be made here.

stress how palpably erroneous it was for the trial court to ignore the serious problem flagged by the defendant's motion to dismiss. It is incumbent upon a trial judge who is presented with a motion like the one the defendant made in this case to either dismiss the indictment, require the state to elect the act which it alleges constitutes the crime, or instruct the jury that they must agree unanimously on a specific act that constitutes the crime before the defendant can be found guilty. *See State v. Kitchen*, 110 Wash.2d 403, 756 P.2d 105 (1988); *Spencer v. Superior Court*, 136 Ariz. 608, 667 P.2d 1323 (1983).

First, the technical point. I do not believe that it is quite correct to call this indictment "duplicitous." The indictment charged a single count of sexual abuse—one crime—that occurred on a single day. However, the state intended, and was permitted, to show that a whole series of crimes had occurred on that day.

A duplicitous indictment is one that charges more than one crime in the same count. *Spencer*, 136 Ariz. at 610, 667 P.2d at 1325. For example, in *Spencer* the indictment charged that the defendant molested the victim "from July 1979 through August 1980." *Id.* at 609, 667 P.2d at 1324. It is true that some cases, like *People v. Keindl*, 509 N.Y.S.2d 790, 68 N.Y.2d 410, 502 N.E.2d 577 (1986), speak of situations like the one we are presented with as involving duplicitous indictments. Other cases, like *People v. Slaughter*, 211 Cal. App.3rd 577, 259 Cal.Rptr. 437 (1989) and *United States v. Payseno*, 782 F.2d 832 (9th Cir.1986), eschew that term for this set of circumstances. In *Kitchen*, the court referred to this situation as a "multiple acts" case. *Kitchen*, 110 Wash.2d at 405–06, 756 P.2d at 106. What we call the problem presented here has no practical ramification in this case at this stage, but it is well to be precise in this confusing area of the law. Indeed, perhaps it was too cursory a glance at the word "duplicitous" that accounts for the trial judge's otherwise inexplicable failure to grant the defendant's timely objection to the manner in which the state was presenting this case.

Leaving that technical point, I agree with the majority that the only real problem with what happened here was the potential for a less than unanimous verdict. The majority concludes that the error was not prejudicial because the jury was faced with only one question—who was telling the truth?

I take a slightly different tack than does the majority. I think that there was clear error here, but that, under all the facts of the case, the error was harmless beyond a reasonable doubt. That is the proper inquiry. *See State v. Kitchen.* While the jury did not *have* to find the defendant committed either all of the acts or none of them, I think it highly likely that they decided to believe the victim as to everything that occurred. While it is possible to quarrel with various aspects of the cases the majority relies on, the most salient feature that I find in several of them is the failure of the defense to offer, or point to evidence by which the jury could somehow distinguish between the multiple acts testified to by the victim. *See People v. Winkle*, 206 Cal.App.3d 822, 253 Cal.Rptr. 726 (1988); *People v. Deletto*, 147 Cal.App.3d 458, 195 Cal.Rptr. 233 (1983) *cert. denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984). Those cases were presented to the jury by both the state and the defense as an all or nothing proposition. As the majority so correctly observes, that is also true of the case before us. Here, the defense suggested that whatever the defendant did was accidental and argued that the victim simply built up harmless incidents in her mind until she was convinced they were intentional. There was no attempt to distinguish between the different acts—the defense was identical as to all of them.

I agree with the majority about the other aspect of the case. I have also considered whether this case should be reversed because there was cumulative error. I do not believe reversal is called for. I believe the defendant received a fair trial.