NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID CRAMER, *Appellant.*

No. 1 CA-CR 14-0157
FILED 7-28-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-005939-001
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Office of the Attorney General, Phoenix
By William Scott Simon
*Counsel for Appellee*

Office of the Maricopa County Public Defender, Phoenix
By Terry J. Reid
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Peter B. Swann joined.

---

**G O U L D**, Judge:

¶1        Defendant, David Cramer, appeals from his convictions and sentences for one count of possession of narcotic drugs for sale and six counts of misconduct involving weapons.  He challenges two of the trial court's evidentiary rulings, and he contends the prosecutor engaged in misconduct.  Defendant also argues the drug charge is duplicitous.  Lastly, Defendant contends he is entitled to an additional day of presentence incarceration credit.  For the reasons that follow, we agree that the court erred in computing Defendant's sentence.  In all other respects, we affirm.

## BACKGROUND

¶2        As police were surveilling Defendant's home for potential illicit drug activity, they observed D.S. arrive at the residence, enter, and drive away ten minutes later.  Officers followed D.S., and Detective Buffington effectuated a traffic stop.  D.S. informed Buffington that there were "pills" in his car, and upon further questioning, D.S. admitted he had just purchased the pills from Defendant.  Two of the pills were oxycodone, a narcotic that D.S. had been buying from Defendant for the past year.  Soon thereafter, police arrested Defendant as he drove from his home.

¶3        During a search later that evening of Defendant's home and vehicles pursuant to a warrant, officers discovered a number of pills, including oxycodone, and prescription bottles for oxycodone and other medications bearing Defendant's name.  Police also found on Defendant's cell phone multiple text messages from D.S. and other individuals requesting to purchase oxycodone.  Texts between Defendant and D.B. just before Defendant's arrest indicated Defendant was going to meet D.B. to purchase 15 oxycodone pills for $42.00 to $43.00 each.  Defendant had approximately $600.00 in his pocket when he was arrested.  Further, police discovered two handguns in Defendant's kitchen and two in the master bedroom.  A "drug ledger" was located in one of Defendant's vehicles.

¶4        The State charged Defendant with one count of possession of narcotic drugs for sale, two counts of possession of dangerous drugs for sale, and eight counts of misconduct involving weapons.  The weapons charges were based on allegations that Defendant was a prohibited possessor and that he knowingly used or possessed the four handguns during the commission of the drug offenses.

¶5        The court entered a judgment of acquittal as to two of the misconduct involving weapons charges.  The jury acquitted Defendant of the two charges relating to dangerous drugs and returned guilty verdicts as to the remaining counts.  The court ordered concurrent sentences of imprisonment and credited Defendant with 568 days of presentence incarceration.  Defendant appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[1]

**DISCUSSION**

I.    Prior Consistent Statements

¶6        D.S. testified at trial that he purchased oxycodone from Defendant, and he also explained he was testifying pursuant to a testimonial agreement with the State.  After D.S. testified, and over Defendant's objection on hearsay grounds, the court admitted in evidence a video recording of D.S.'s police interview wherein D.S. made statements consistent with his trial testimony.  The court reasoned the recording was admissible under Arizona Rule of Evidence ("Rule") 801(d)(1)(B) (2013)[2] as a prior consistent statement to rebut Defendant's express or implied charge during D.S.'s cross-examination that D.S. fabricated testimony because of the plea agreement with the State.  Defendant subsequently moved for a mistrial, arguing the recorded interview did not fall within the gambit of Rule 801(d).  The court denied the motion.

¶7        Rule 801(d)(1)(B) allows for the admission of a trial witness's prior statements that are consistent with his or her testimony "to  rebut an express or implied charge that the declarant recently fabricated" statements made at trial.  Ariz. R. Evid. 801(d)(1)(B).  To be admissible, the prior

---

[1]       We cite to a statute's current version unless otherwise noted.

[2]       Because the rule was amended and renumbered effective January 1, 2015, we cite the version in effect at the time of trial.

statement must have been made before the motive to fabricate arose. *State v. Martin*, 135 Ariz. 552, 553 (1983).

**¶8**          Defendant argues that the record does not support the trial court's determination that D.S.'s plea agreement provided the motive to testify falsely; rather, Defendant contends D.S.'s motive arose before the interview when D.S. was stopped by police. In support, Defendant points to D.S.'s testimony regarding his belief that if he cooperated with the officers investigating Defendant's drug activity, he would not face prosecution for his own illicit possession of prescription pills. Indeed, Defendant asserts: "[I]t was clear that [D.S.] believed an agreement [with police] had been reached." Defendant also contends he attacked D.S.'s credibility "on multiple fronts[;]" thus, the court erred in finding Defendant focused on the plea agreement as the basis for challenging D.S.'s veracity at trial. We review the court's admission of evidence for an abuse of discretion. *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003).

**¶9**          We agree with Defendant that the record indicates D.S. wanted to cooperate with police in their investigation of Defendant's drug dealings. Thus, D.S. arguably had a motive to untruthfully implicate Defendant when police interviewed him. However, the record does not, contrary to Defendant's argument, indicate D.S. had an agreement with the State to cooperate in the investigation at the time he was interviewed. Rather, D.S. subjectively believed his cooperation would result in favorable treatment with respect to his illegal activity. Moreover, the record also clearly demonstrates that Defendant impeached D.S. with, among other things, his subsequent plea agreement with the State. Indeed, during her opening statement, Defense counsel asserted:

> You will hear that [D.S.] in exchange for getting up on that stand and telling you his story has received a very favorable plea agreement from the state for testifying during the course of this trial, and for getting up on that stand and testifying for the state he spared himself significant time in custody because he's getting up on that stand.

**¶10**         On this record, we cannot conclude that the court abused its discretion in admitting the recorded interview pursuant to Rule 801(d)(1)(B) to rebut Defendant's use of the plea agreement to impeach D.S.[3]

---

[3]      Because we conclude the court did not abuse its discretion in admitting the recorded interview, we need not separately address the court's denial of Defendant's motion for mistrial.

In any event, even if the court did err in admitting this evidence, the error was harmless based on the overwhelming evidence of Defendant's guilt, including D.S.'s trial testimony, the pills and drug ledger found in Defendant's home and vehicles, and the text messages on Defendant's phone regarding sales of oxycodone. Furthermore, D.S. was subjected to thorough cross-examination at trial. *See State v. Hoskins*, 199 Ariz. 127, 144, ¶ 66 (2000) (concluding that any error in admitting a witness's prior consistent statements was harmless when they were included in witness's testimony and the witness was thoroughly cross–examined).

## II. Text Messages Regarding Sales

**¶11** At trial, the State introduced text messages from "Mondo" seeking to purchase narcotics from Defendant. Defendant argues this evidence is improper other-act evidence under Rule 404(b) admitted to show his propensity for selling narcotics. We disagree.

**¶12** Rule 404(b) prohibits evidence of other acts "to prove the character of a person in order to show action in conformity therewith." The text messages here are not evidence of Defendant's *other* conduct used to prove he possessed narcotics for sale. Rather, the messages between Defendant and Mondo constitute relevant circumstantial evidence that Defendant knowingly possessed narcotics, not merely for his own personal use, but to sell. *See State v. Chavez*, 225 Ariz. 442, 444, ¶ 9 (App. 2010) (concluding text messages between prospective drug purchasers and defendant are circumstantial evidence of defendant's possession of drugs for sale). As such, Rule 404(b) is inapplicable, and we reject Defendant's argument.

## III. Prosecutorial Misconduct

**¶13** Defendant contends numerous instances of prosecutorial misconduct denied him a fair trial. Specifically, he argues the prosecutor (1) improperly argued facts that were not in evidence; (2) invited the jury to "speculate and guess" as to why Defendant possessed empty oxycodone bottles; and (3) improperly elicited inadmissible hearsay.

**¶14** Prosecutorial misconduct is not merely "legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial." *Pool v. Superior Court*, 139 Ariz. 98, 108-09 (1984). To justify reversal, the misconduct "must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *State v. Lee*, 189 Ariz. 608, 616 (1997) (citations omitted). Even then, reversal is not required

unless the defendant was denied a fair trial. *State v. Bible*, 175 Ariz. 549, 600 (1993).

A.      A.C.

**¶15**      During their surveillance, police officers trailed a vehicle leaving Defendant's home.  The officers testified that the driver, A.C., did not immediately pull over when they attempted a traffic stop.  After A.C. eventually stopped, he consented to a search of his vehicle, and the officers found no drugs.  Detective Buffington testified that A.C. could be the "Mondo" who had texted Defendant earlier that day about purchasing oxycodone.

**¶16**      During the officers' direct testimony, the court sustained Defendant's objections when the prosecutor specifically asked whether A.C. delayed pulling over for a long enough time to "get rid of something" or to "take two or three small pills and get rid of them[.]"  During cross-examination Defense Counsel questioned one of the officers involved in the stop. The line of questioning indicated that the officers had not observed A.C. throw any drugs out the window of his vehicle.  On redirect, the prosecutor elicited testimony showing that the officers were not in a position to observe whether drugs were thrown out of the car.

**¶17**      Defendant argues the prosecutor committed misconduct during closing arguments when he stated: "If you will remember when [A.C.] was pulled over he didn't pull over right away. It was getting dark and the officers didn't get a good view. Could he have gotten rid of the two pills he purchased from the Defendant? I would suggest yes."

**¶18**      Defendant did not object to the prosecutor's statements; thus, we review for fundamental error.  *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (failure to object to alleged trial error results in fundamental error review).  To obtain relief under fundamental error review, Defendant has the burden to show that error occurred, the error was fundamental and that he was prejudiced thereby.  *See id.*, at, 567-68, ¶¶ 20-22.   Fundamental error is error that "goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial."  *Id*. at 568, ¶ 24.  The showing required to establish prejudice "differs from case to case." *Id.* at 568, ¶ 26. A defendant "must show that a reasonable jury, applying the appropriate standard of proof, could have reached a different result." *Id.* at 569, ¶ 27.

**¶19**      Defendant's argument fails.  The prosecutor's arguments are reasonable inferences based on the evidence.  The testimony of the officers

established that they were not able to view whether A.C. had thrown drugs out of his car before he was stopped. *See supra* at ¶ 16.

> B.      Dustin H. Text Messages

**¶20**      When Defendant was arrested, an officer drove Defendant's car back to Defendant's home. The officer found a cell phone in the vehicle. Another officer retrieved the phone and placed it in the garage. Thus, while Defendant was detained by police, his cell phone was in his garage where officers waited for Detective Buffington to obtain the search warrant.

**¶21**      During this time, someone named "Dusty" sent a text to Defendant's phone indicating that he was on the way to Defendant's home to purchase narcotic pills. In response, two outgoing texts on Defendant's phone read: "Yeah just got out of the shower. Come on over. When you getting here?" Minutes later, at 10:43 p.m., a text message indicates "Dusty" arrived.

**¶22**      At trial, Detective Cano testified Dustin H. walked into Defendant's garage between 10:25 p.m. and 11:10 p.m. whereupon Cano arrested and *Mirandized*[4] Dustin. The trial court sustained objections to the State's attempts to illicit testimony connecting "Dusty" to Dustin H. The State did elicit testimony, however, from Detective Buffington that during drug investigations when a person is arrested, his or her phone may thereafter ring, and "sometimes officers answer those phones." Defendant successfully objected to the State introducing evidence of a particular officer responding to Dusty's text messages on Defendant's phone.

**¶23**      During closing arguments, defense counsel argued that, because Defendant was detained at the time of the aforementioned text conversation with Dusty, "[i]t is not [Defendant]. . . . I suggest to you that there is a reasonable doubt whether that phone at all is [Defendant's] phone since there are texts going out of that phone long after he was in custody." In rebuttal, the prosecutor argued:

> We also know for about an hour and a half the officers were waiting in that garage and other areas for the search warrant to be signed because they went into the house at about midnight. *So if that phone is sitting there, there are officers standing around waiting and there are text messages coming in,*

---

4      *Miranda v. Arizona*, 384 U.S. 436 (1966).

*should I come over; should I come over. It is not a huge leap of logic that one of them may have picked it up*.

[DEFENSE COUNSEL]: Objection, facts not in evidence.

THE COURT: Overruled. You may continue.

[PROSECUTOR]: *It is not a huge leap of logic to think that one of them may have picked it up and said yeah, sure come on by and we will see who shows up and we will talk to them*. Can I tell you that that's what happened? No, because nobody stood up there and testified to that but that's a logical inference and it explains where there would be a text message after he is in custody. The fact is the vast majority of these text messages and really the most important ones are from the Defendant himself and they are from before he was in custody despite what the defense tries to tell you.  (Emphasis added).

**¶24**　　　　Defendant contends the italicized language amounted to an improper invitation to the jury "to consider unsworn evidence that a police officer responded to a text message, that Dustin [H.] was the Dusty in the text messages, and to infer that Dustin [H.] was a criminal suspect as he was provided with *Miranda* warnings."

**¶25**　　　　We disagree.  The prosecutor's comments are reasonable inferences from the evidence to explain the existence of text messages on Defendant's phone while he was in custody, especially in response to Defendant's closing argument asserting the cell phone in question did not belong to him.  *See State v. Zaragoza*, 135 Ariz. 63, 68 (1983) ("Wide latitude is given in closing arguments and counsel may comment on the evidence and argue all reasonable inferences therefrom.").  No misconduct occurred, let alone misconduct that deprived Defendant a fair trial.

　　　　C.　　Empty Prescription Bottles

**¶26**　　　　Referring to empty medication bottles discovered in Defendant's home, the prosecutor argued the following during closing:

What is kind of interesting is he has also got one or two empty bottles of Oxycodone laying around. Now, why do you do that? Well, I guess we could speculate about that; but if you are going to go get additional Oxycodone not with a prescription, you would probably want a container to put those in that has your name and Oxycodone as a prescription

on it. So if you get caught with them, you don't get in trouble. That might be a reason that you have empty Oxycodone bottles laying around.

**¶27** Defendant asserts the prosecutor's argument reflects an improper invitation to the jury to "speculate and guess" as to Defendant's "intent[.]" Again, Defendant did not object to the prosecutor's argument; thus, we review for fundamental error.

**¶28** The record does not support Defendant's contention. The prosecutor's comments are reasonable inferences based on the undisputed evidence of the empty bottles found on his property. This is especially so based on the wide latitude afforded counsel during closing arguments.

D. Conversation at Pharmacy

**¶29** During the investigation into Defendant's suspected drug activities, Detective Buffington trailed Defendant to a pharmacy where Buffington observed Defendant attempting to fill a prescription. Buffington testified that, while he was inside the pharmacy, he observed Defendant at the drive-through window and engage in a conversation with a pharmacy technician. The court sustained an objection by Defendant and ruled Buffington could not testify about statements the technician made, but he could testify as to his observations of the encounter between Defendant and the technician. Thereafter, defense counsel questioned Detective Buffington about his observations of the pharmacist's interaction with the Defendant.

**¶30** On rebuttal, the prosecutor asked Buffington if he could hear what the pharmacy technician stated to the Defendant. Defense counsel objected on the grounds of hearsay and the objection was overruled by the court.

**¶31** Regarding the questions on rebuttal, Defendant argues: "This incident illustrates the prosecutor's disregard for [Defendant's] right to a fair trial conducted within the rules of evidence. The prosecutor did not call the pharmacy technician to testify, therefore, any statements by the technician were inadmissible hearsay. However, the prosecutor's line of questioning left no doubt as to what the technician said."

**¶32** We find no misconduct here. Detective Buffington did not testify as to the content of any statement made by the pharmacy technician, he merely testified he could hear and understand him while the technician spoke with Defendant. However, even if "the prosecutor's line of

questioning left no doubt as to what the technician said," and therefore amounted to an improper admission of hearsay evidence, this legal error does not rise to the level of misconduct. *See Pool*, 139 Ariz. at 108-09. And any error in this respect was harmless, because D.S., in the recorded police interview, stated Defendant had informed him of the pharmacist's refusal to refill a prescription. *See, e.g., State v. Shearer*, 164 Ariz. 329, 339-40 (App. 1989) (holding that the introduction of inadmissible evidence was harmless error when said evidence was cumulative to and consistent with other trial testimony).

¶33        Because we conclude none of the examples Defendant raises amount to prosecutorial misconduct individually, we reject his argument that they cumulatively denied him a fair trial.

IV.    Duplicitous Charge

¶34        Defendant argues the trial court fundamentally erred in allowing the State to proceed on a duplicitous charge because the jury's verdict on the possession of narcotics for sale did not indicate whether the sale to D.S. constituted the criminal act or, alternatively, whether the sale to A.C. did. According to Defendant, the prosecutor argued that Defendant committed two criminal acts, one sale to D.S. and one to A.C., and the court, in order to ensure unanimity of a verdict, was required either to order the State to choose which act it was proceeding with or to instruct the jury that it must unanimously agree on the act to which it was rendering a verdict.

¶35        When evidence of more than one criminal act is introduced at trial to prove a single charged offense, a defendant faces inadequate notice of the charge he must defend, there exists the danger of a non-unanimous jury verdict, and pleading double jeopardy in a later prosecution can be impossible. *State v. Klokic*, 219 Ariz. 241, 244, ¶ 12 (App. 2008). Arizona courts have referred to this scenario as a "duplicitous charge" as opposed to a "duplicitous indictment," the latter of which refers to an indictment that charges two or more separate acts in a single count. *Klokic,* at 243-44, ¶¶ 10-12.

¶36        If the State presents evidence of multiple criminal acts to prove a single count, the trial court "must either require 'the state to elect the act which it alleges constitutes the crime, or instruct the jury that they must agree unanimously on a specific act that constitutes the crime before the defendant can be found guilty.'" *Id.* at ¶ 14, *quoting State v. Schroeder*, 167 Ariz. 47, 54 (App. 1990) (Kleinschmidt, J., concurring). Violation of the

right to a unanimous verdict can constitute fundamental error. *State v. Davis*, 206 Ariz. 377, 390, ¶ 64 (2003).

**¶37**      Here, Defendant did not face a duplicitous charge and its attendant problems. The State charged him with a single count of possession of narcotic drugs for sale pursuant to A.R.S. § 13-3408(A)(2). Had the State charged him with a single count of *sale of narcotic drugs* under A.R.S. § 13-3408(A)(7), the evidence presented in this case regarding the separate sales to D.S. and A.C. could have resulted in a duplicitous charge. However, based on the charge in the indictment, the separate sales served as circumstantial evidence that Defendant committed one criminal act, possessing narcotics for sale.  Moreover, Defendant challenged the charge by arguing he possessed the narcotics for personal use.  Thus, the court's failure to cure whatever defect occurred as a result of the evidence of multiple sales did not deny Defendant his right to present his defense. Defendant, therefore, suffered no prejudice.  *See State v. Whitney*, 159 Ariz. 476, 480.  No fundamental error occurred.

V.    Sentence

**¶38**      Defendant asserts, and the State concedes, that the trial court incorrectly calculated Defendant's time served. We agree. The record reveals that Defendant was taken into custody on July 25, 2012.  He remained in custody until he was sentenced on February 14, 2014. Defendant, therefore, was incarcerated for a total of 569 days prior to sentencing, and he should be awarded one additional day of presentence incarceration credit.  We modify the sentence accordingly.  *See* Ariz. R. Crim. P. 31.17(b); *State v. Stevens*, 173 Ariz. 494, 495–96 (App. 1992) (correcting a miscalculation in credit by modifying the sentence without remanding to the trial court).

## CONCLUSION

¶**39** We award Defendant an additional day of presentence incarceration credit. In all other respects, Defendant's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama