NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CARL LEON BOGAN, *Appellant*.

No. 1 CA-CR 20-0274
FILED 2-11-2021

Appeal from the Superior Court in Maricopa County
No.  CR 2018-147461-001
The Honorable Marvin L. Davis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge David D. Weinzweig joined.

_____

**B R O W N**, Judge:

¶1        Carl Leon Bogan appeals his conviction and sentence for theft of means of transportation.  Bogan argues the superior court erred when it admitted speculative testimony over his objection.  Because the error was harmless, we affirm.

## BACKGROUND

¶2        M.D. was driving her daughter's Ford Expedition ("Expedition") when she ran over a concrete barrier and got stuck next to the light rail track.  Bogan did not know M.D., but after noticing the dilemma he helped her maneuver the Expedition off the track.  M.D. was on her way to a doctor's appointment and Bogan offered to accompany her to the appointment.  Bogan went into the doctor's office with M.D. and hugged her before she was summoned to see the doctor.

¶3        A short time later M.D. looked in her purse and noticed her keys were missing.  When she could not find Bogan, she realized the Expedition was missing as well.  In her 911 call, M.D. gave a description of Bogan and reported the Expedition had been stolen.

¶4        M.D.'s daughter had installed a tracker on the Expedition, which allowed the police to locate it quickly in the parking lot of an apartment complex.  Bogan and another male were sitting inside the Expedition as officers watched it for over 15 minutes before arresting Bogan.  During a recorded police interview, Bogan initially claimed he did not know whose car he was sitting in but that he took the bus there and spent the night with a lady who lives in the apartment complex.  He claimed that "OG" told him to get into the Expedition and left right before the police officers arrested him.  Bogan also said "I made a mistake . . . y'all got me   . . . it's just done . . . it's over."  Later in the interview, Bogan claimed he borrowed the car from M.D. to get it fixed, but never told her, adding he needed to apologize.

¶5        Detective Pocknell, who interviewed Bogan, testified at trial. In the interview, which was played for the jury, Bogan said he needed to apologize to M.D. for taking the Expedition to get it fixed without asking. Bogan testified that he was not honest with the police officers because M.D. asked him to get her marijuana and he did not want to get her in trouble. He also said she gave him the keys and told him to get the Expedition fixed.

¶6        The jury found Bogan guilty of theft of means of transportation, and the superior court sentenced him to 11.25 years. Bogan timely appealed.

## DISCUSSION

¶7        When a proper objection is made at trial, we consider the alleged error under the harmless error standard. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). "Error, be it constitutional or otherwise, is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Anthony*, 218 Ariz. 439, 446, ¶ 39 (2008) (citation and internal quotation marks omitted). "The State has the burden of convincing us that any error was harmless." *Id.*

¶8        Bogan argues the superior court should have sustained his objection to Pocknell's testimony because it was speculative. The relevant exchange occurred during direct examination at trial:

> [Prosecutor]: Is it common based on your experience for people in these interviews to express that they want to apologize to whoever they may have offended during this -- the course of events?
>
> [Pocknell]: Some interviews, yes.
>
> [Prosecutor]: And what does that mean to you?
>
> [Pocknell]: Usually that they did something wrong and they're trying to make it better or they're trying to --
>
> [Defense Counsel]: Objection, speculation, your Honor, foundation, relevance as to this case.
>
> [The Court]: Objection overruled. He can talk about what he believed it meant to him.

[Pocknell]: In my experience, people usually want to try to make some type of amends and show that they're sorry for what they did.

¶9        The State concedes error based on relevance, but contends the error was harmless.  We agree.

¶10        Although the superior court should have sustained Bogan's objection to Pocknell's irrelevant testimony, nothing in the record reveals his brief comments about apologies affected the outcome of the case. Pocknell spoke generally about why people may apologize and whether they commonly apologize in police interviews.  His testimony tracked the other evidence presented, including Bogan's own words during the police interview and Bogan's trial testimony that he wanted to apologize for missing a phone call from M.D.  It was for the jury to decide *what* he was apologizing for, which was something Pocknell did not opine about.  Nor did Pocknell offer an opinion on the credibility of any witness.  *See State v. Schroeder*, 167 Ariz. 47, 49 (App. 1990) (explaining that witness credibility is an issue the jury decides).  Because the State has met its burden of showing the error did not affect or contribute to the jury's determination, the error was harmless.

**CONCLUSION**

¶11        We affirm Bogan's conviction and sentence.

