192 Cal.App.3d 535 (1987)
237 Cal. Rptr. 513
THE PEOPLE, Plaintiff and Respondent,
v.
MARK JAMES SCHULTZ, Defendant and Appellant.
Docket No. D004061.
Court of Appeals of California, Fourth District, Division One.
June 8, 1987.
*536 COUNSEL
Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John W. Carney and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[1]]
OPINION
WIENER, J.
Defendant Mark James Schultz appeals after a jury found him guilty of two counts of forcible oral copulation in concert (Pen. Code, § 288a, subd. (d))[2] based on events occurring in the San Diego County jail facility in Vista. As to one of the two counts, the Attorney General concedes that a technical error in the taking of the verdict requires reversal and *537 precludes retrial on that count. As to the remaining count, we conclude that a conceded error by the trial judge in refusing to admit defense-proffered evidence cannot reasonably be said to have affected the result and that Schultz's claims of instructional error are unpersuasive. Accordingly, we affirm as to one count and reverse as to the other.

FACTUAL AND PROCEDURAL BACKGROUND
In July 1985, Schultz was incarcerated in "Mod 4" of the Vista jail facility along with the alleged victim, John Hughes. On the afternoon of July 14, a fellow inmate named Edward Mills approached Hughes while he sat on the toilet and instructed Hughes to orally copulate him "or else." When Hughes refused, Mills responded by slapping him and repeating his demand. When Hughes said nothing, Mills slapped him again and said, "Hurry up." Hughes then proceeded to orally copulate Mills.
While these events took place, Schultz sat on his bunk and watched. Hughes testified that Mills laughed and acted as though the entire incident was for the purpose of "showing off." Schultz then got down off his bunk, snapped his fingers and told Hughes, "Suck this." When Hughes hesitated, Mills slapped him on the back of the head and said, "Do what the man says." Hughes then orally copulated Schultz, the incident lasting between one and two minutes. During that time, when Hughes pulled back, Mills slapped him saying, "Don't stop. Keep going." Schultz then backed off saying, "That's cool." He and Mills began to laugh.
A short time later after dinner, Mills approached Hughes saying, "You are going to do me again." When Hughes said "Why not later?" Mills slapped him and repeated his demand. The two then went to Hughes's cell where Hughes orally copulated Mills on Hughes's bunk for approximately 30 to 40 minutes. Hughes was then forced to orally copulate another inmate named Paul Prince.
Approximately 15 minutes later, Schultz approached Hughes and told him he was going to "give him head" in about five minutes whether Hughes liked it or not. Schultz instructed Hughes to put curtains around his bunk for privacy. When Schultz returned, Hughes suggested waiting but Schultz said, "No. We will do it right now." Schultz then crawled into Hughes's bunk and looked at a pornographic magazine while Hughes orally copulated him. Thereafter, Mills forced Hughes to orally copulate two other prisoners. Prior to one of these incidents, Mills slapped Hughes on the left side of his head with such force that it punctured Hughes's eardrum.
The entire series of incidents took place over a period of approximately seven hours. During this time, Hughes made repeated phone calls to relatives *538 in an attempt to have information conveyed to the guards that he was in trouble. He was continually frustrated in these attempts because one or more of the participants accompanied him to the phone and listened as he made his call. Finally, Hughes was able to phone his father without anyone overhearing. When the information from Hughes's father was relayed to the jail guards, they began observing Hughes.[3] At one point, Hughes entered the cell occupied by Mills, Schultz, Prince and one other prisoner and was obscured from view. When a guard went to check out the situation, a warning was sounded by one of the prisoners and there was a great deal of movement within the cell. One of the guards then removed Hughes from the cell and took him to the medical ward where he was diagnosed as having a punctured eardrum. The nurse who examined Hughes observed fresh blood in the ear canal. The nurse testified that such an injury is consistent with being slapped on the side of the head.
Schultz testified on his own behalf. He admitted to one act of oral copulation occurring on Hughes's bunk but maintained that Hughes's participation was voluntary. Schultz denied participating in or knowing anything about any other acts of oral copulation.

DISCUSSION

I, II[*]
.... .... .... .... .... .

III
(1a) Pointing to the fact that the evidence showed more than two acts of forcible oral copulation with which he could be connected, Schultz relies on People v. Madden (1981) 116 Cal. App.3d 212 [171 Cal. Rptr. 897] in arguing that the trial court erred in failing to instruct sua sponte pursuant to CALJIC No. 17.01 that the jurors must agree on the specific act constituting the charged crime.[5]
*539 (2) It is well established that a trial court is not obligated to give an instruction if the evidence presented at trial is such as to preclude a reasonable jury from finding the instruction applicable. (People v. Flannel (1979) 25 Cal.3d 668, 684 [160 Cal. Rptr. 84, 603 P.2d 1].) This principle applies to the trial court's obligations in giving both requested and sua sponte instructions (People v. Wickersham (1982) 32 Cal.3d 307, 325 [185 Cal. Rptr. 436, 650 P.2d 1]) and is implicitly based on the concern that the giving of unnecessary instructions  even if abstractly correct  increases the potential for jury confusion. (See generally People v. Jackson (1954) 42 Cal.2d 540, 546-547 [268 P.2d 6]; Davenport v. Stratton (1944) 24 Cal.2d 232, 254 [149 P.2d 4].) The "legalese" of many standard jury instructions is difficult enough for jurors to understand without their being forced to deal with additional instructions having no application to the facts of the case.
Applying this principle, numerous cases have concluded that the failure to give CALJIC No. 17.01 does not require reversal unless "the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." (People v. Gonzalez (1983) 141 Cal. App.3d 786, 791 [190 Cal. Rptr. 554]; see, e.g., People v. Deletto (1983) 147 Cal. App.3d 458, 464-474 [203 Cal. Rptr. 233]; People v. Parsons (1984) 156 Cal. App.3d 1165, 1174 [203 Cal. Rptr. 412]; People v. McIntyre (1981) 115 Cal. App.3d 899, 911 [176 Cal. Rptr. 3]; see also People v. Diedrich (1982) 31 Cal.3d 263, 283 [182 Cal. Rptr. 354, 643 P.2d 971] ("This is not a case where the jury's verdict implies that it did not believe the only defense offered.").) Some cases resolve the issue by concluding that where the facts provide no basis for juror disagreement, it is not error to fail to give CALJIC No. 17.01. (See, e.g., Gonzalez, supra, 141 Cal. App.3d at p. 792; People v. Jacobs (1984) 158 Cal. App.3d 740, 752 [204 Cal.Rptr 849]; see also People v. Crawford (1982) 131 Cal. App.3d 591, 599 [182 Cal. Rptr. 536] ("[W]here the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the instruction is not necessary to the jury's understanding of the case.").) Others treat the failure to instruct as error but deem it harmless. (See, e.g., Deletto, supra, 147 Cal. App.3d at p. 473; Parsons, supra, 156 Cal. App.3d at p. 1174; People v. Turner (1983) 145 Cal. App.3d 658, 681-682 [193 Cal. Rptr. 614].)
Consistent with the Supreme Court pronouncements in Flannel and Wickersham, we think it preferable to treat the instruction as unnecessary  and hence the failure to instruct is not error  unless there is evidence based on which reasonable jurors could disagree as to which act the defendant *540 committed. If there is such evidence, the failure to give CALJIC No. 17.01 will most often, though not necessarily, be prejudicial.[6]
(1b) Turning to the facts of this case, we believe the trial court's failure to give the CALJIC No. 17.01 instruction was not error because the evidence was not such as to allow reasonable jurors to disagree as to which acts Schultz committed. First of all, there were only three acts of oral copulation during which Schultz was present: the two acts in which he participated and the first incident between Hughes and Mills which Schultz watched. As to all these instances, the case amounted to a credibility contest between Hughes and Schultz. There were no other witnesses to the events; no one corroborated Schultz's testimony that the one act to which he admitted was voluntary; no one provided him with an alibi as to the act he said never occurred.[7] Although the jury might have rejected as inconsequential Schultz's involvement in the incident where he watched Hughes orally copulate Mills, there was no way they could have relied on his involvement in that act while rejecting his involvement in one of the other two where his participation was more direct. In order for the unanimity instruction to be significant, there must be evidence from which reasonable jurors could both accept and reject the occurrence of at least the same number of acts as there are charged crimes. Such evidence is utterly lacking here. If the jury believed Schultz committed any acts of forcible oral copulation at all, at a minimum it must have found that he committed those two acts in which he was alleged to be a direct participant. Accordingly, the trial court did not err in failing to give CALJIC No. 17.01 sua sponte.

IV, V[*]
.... .... .... .... .... .

*541 DISPOSITION
The judgment as to count one is affirmed. The judgment as to the remaining count (count three) is reversed with instructions to enter a judgment of acquittal.
Kremer, P.J., and Work, J., concurred.
A petition for a rehearing was denied June 24, 1987, and appellant's petition for review by the Supreme Court was denied September 24, 1987.
NOTES
[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of sections I, II, IV and V.
[2] All statutory references are to the Penal Code unless otherwise indicated. When referring to statutory subparts, we omit repetition of the word "subdivision."
[3] One guard's testimony confirmed Hughes's statement that when Hughes went to make a phone call, he was followed by Mills, Schultz and Prince.
[*] See footnote, ante, page 535.
[5] CALJIC No. 17.01 (4th ed. 1979) provides as follows: "The defendant is charged with the offense of ____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."
[6] We note in this context that courts have utilized different standards in assessing whether a failure to give CALJIC No. 17.01 is prejudicial. (Cf. People v. Deletto, supra, 147 Cal. App.3d at p. 473 (Chapman test) with People v. McIntyre, supra, 115 Cal. App.3d at p. 911 and People v. Turner, supra, 145 Cal. App.3d at pp. 681-682 ("reasonable probability" standard); see also People v. Kent (1981) 125 Cal. App.3d 207, 214, fn. 7 [178 Cal. Rptr. 28].)
[7] Other than Schultz, the only defense witness was a fellow inmate at the Vista facility who testified Hughes had previously demonstrated animosity toward Schultz and had indicated "that if he had a chance, he would sucker punch or get the better of Schultz, if he could get a chance to."