[No. A036800. First Dist., Div. Four. Jan. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD M. MEYER, Defendant and Appellant.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of section IIA.

**Counsel**

Denis Honeychurch and Honeychurch & Finkas for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

SABRAW, J.—Defendant was charged with spousal rape (Pen. Code, § 262)[1] alleged to have occurred on or about May 31, 1985, lewd and lascivious conduct upon a child under the age of 14 by means of force and/or fear (§ 288, subd. (b)) alleged to have occurred on or about May 1985, rape by foreign object (§ 289, subd. (a)) alleged to have occurred on or about May 1985, and a further count of lewd and lascivious conduct alleged to have occurred between May 1982 and May 1985.

The spousal rape charge was severed and defendant was tried on the remaining charges. The jury found defendant guilty of lewd and lascivious conduct alleged to have occurred in May 1985, and not guilty on the other charges.

On appeal defendant argues the trial court erred (1) in ruling evidence that defendant had committed violent acts against the victim and her siblings was admissible, and (2) in failing to instruct sua sponte with CALJIC 17.01. We affirm.

### I. FACTS AND PROCEDURAL HISTORY

Jennifer N., the victim, age 11, lived with her stepfather, defendant, and her mother from the time she was two until May of 1985. She testified that just prior to May 31, 1985, she was in defendant's bedroom when he put his hand down her pants and put his finger inside her vagina. He had done the same thing a couple of weeks before.

She also testified that prior to May 1985 defendant had stuck his penis inside her vagina. And he had molested her at least 10 other times either by putting his finger or penis inside her vagina. She claimed she did not tell anybody about these incidents because she was afraid of what defendant might do to her.

The defense to the charges was that Jennifer was lying. She was resentful of the physical discipline defendant imposed as well as certain household responsibilities and chores. Also because she had made these allegations she had been placed in a nice foster home. The prosecution called Charles Livershedge from the child protective services to rebut this charge. He said that regardless of the outcome of the case Jennifer would remain in foster care. Two of her brothers had also been removed from the home.

---

[1] Unless otherwise indicated, all further references are to the Penal Code.

Defendant testified on his behalf. He claimed Jennifer was lying and that there was no reason for the two of them to be alone in his bedroom. However, a stipulation was entered that if called to testify two of Jennifer's brothers would state they had seen them entering the bedroom alone and on at least one occasion heard the door lock. Defendant also admitted using excessive physical discipline.

Jennifer's mother testified that Jennifer had a tendency to lie. She stated a friend of Jennifer's had been molested in the spring of 1985, thus suggesting how Jennifer might have come up with the charges. Further witnesses were called to impeach Mrs. Meyer's testimony and to rebut the charge that Jennifer was not truthful.

Finally Dr. Richard Burnini, an emergency room physician, testified that he had examined Jennifer because of abdominal pain. He conducted a pelvic examination and had no opinion on whether or not Jennifer had had sexual intercourse. He saw no evidence of vaginal manipulation either. However, several months had passed since the alleged incident.

## II. ANALYSIS

A. *Did the trial court err in ruling certain uncharged evidence was admissible?* *

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . ·   .   .

B. *Was the failure to instruct under CALJIC No. 17.01 prejudicial error?*

■ Defendant argues that the trial court should have instructed the jury sua sponte under CALJIC 17.01.[5] The purpose behind this instruction was explained in *People* v. *Gordon* (1985) 165 Cal.App.3d 839 [212 Cal.Rptr. 174]. ■ "[W]hen the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable

---

* See footnote, *ante,* page 1307

[5] CALJIC No. 17.01 provides, "The defendant is charged with the offense of ____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

doubt that defendant committed the same specific criminal act." (*Id.* at p. 853.) This assures the jury "directs its mind" to a particular act to determine guilt on the crime charged. (*People* v. *Alva* (1979) 90 Cal.App.3d 418, 424-425 [153 Cal.Rptr. 644].)

▉ Defendant points out that Jennifer testified to two separate acts of sexual misconduct occurring during May of 1985. The acts referred to are the two times defendant stuck his hand down her pants and inserted his finger into her vagina.[6]

Both parties rely on *People* v. *Diedrich* (1982) 31 Cal.3d 263 [182 Cal.Rptr. 354, 643 P.2d 971] and *People* v. *Deletto* (1983) 147 Cal.App.3d 458 [195 Cal.Rptr. 233]. In *People* v. *Diedrich, supra,* the California Supreme Court held it was error to fail to give CALJIC 17.01 when evidence of two *distinct* acts of bribery, each with its own defense, had been presented under one count. The court stated, "There simply is no escape from the fact that two separate violations of section 165 were proved under the umbrella of count I . . ." (*Diedrich, supra,* at p. 281.) It went on to find the error prejudicial stating, "This is not a case where the jury's verdict implies that it did not believe the only defense offered. Diedrich's defenses differed: As far as the Jolly Fox offer is concerned, it consisted of a simple denial. The Remington transactions were 'explained.' Having in mind that the proof of the Jolly Fox offer depended, essentially, on the testimony of a single immunized witness and that the proof of bribery via the Remington transaction was somewhat circumstantial, we feel bound to conclude that the error was prejudicial." (*Id.* at p. 283.)

In *Deletto, supra,* defendant argued his conviction for oral copulation of a minor had to be reversed because the evidence showed two distinct acts of oral copulation—i.e., the minor testified that defendant had made oral contact with her genital area and that he had placed his penis in her mouth and ejaculated. The defense was denial. The appellate court held that because the prosecution failed to elect which offense was to be relied upon to prove the charge, the trial court erred in failing to instruct under CALJIC 17.01. However, the court went on to state, "We view the instant case as one falling within the exception noted in dictum in *Diedrich,* to wit, one in which the jury's verdict implies that it did not believe the only defense offered. We can discover nothing in the instant record by way of evidence or argument by which the jury could have found that defendant committed

---

[6]The People argue, without citation to authority, that defense counsel knew that the offense in question was the second incident. They quote some language by counsel that supports their point. However, defendant correctly points out that what defense counsel subjectively believed was irrelevant. The issue is whether the *jury* focused on the same act in finding defendant guilty.

one act of oral copulation but not the other." (*People* v. *Deletto, supra,* 147 Cal.App.3d at p. 466.)

The court emphasized that the minor's memory was not better as to one incident over the other, nor did her testimony focus on the two acts of oral copulation. Also the defense testimony did not focus on one act over the other. (*Deletto, supra,* 147 Cal.App.3d at pp. 466-467.) "Consequently, neither defense evidence nor defense argument suggested even remotely to the jury that they could somehow distinguish between the two acts of oral copulation testified to by the minor . . . The state of the evidence therefore compels the conclusion that 'the jury's verdict implies that it did not believe the only defense offered.'" (*Id.* at p. 468.)

Although this case would arguably fall under the exception outlined in *Diedrich* and *Deletto,* we need not reach that issue. We conclude that under these facts the instruction was unnecessary. *(People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 792 [190 Cal.Rptr. 554]; *People* v. *Schultz* (1987) 192 Cal.App.3d 535 [237 Cal.Rptr. 513].)

In *People* v. *Schultz, supra,* both the victim and the defendant were incarcerated in the Vista jail facility. The victim testified to several acts of forcible oral copulation. CALJIC 17.01 was not given. The *Schultz* court, acknowledging *Diedrich* and *Deletto,* went on to hold the failure to give the instruction was *not error,* stating "[c]onsistent with the Supreme Court pronouncements in *Flannel* and *Wickersham,* we think it preferable to treat the instruction as unnecessary—and hence the failure to instruct is not error—*unless there is evidence based on which reasonable jurors could disagree as to which act the defendant committed."* (*People* v. *Schultz, supra,* 192 Cal.App.3d at pp. 539-540.) (Italics added.) The court concluded there was not.

Similarly, here no evidence was presented that would have caused disagreement among the jurors as to which act the defendant committed. The evidence consisted of Jennifer's testimony, and her statements concerning the two acts were the same.[7] We therefore conclude that the trial court did not err in failing to give CALJIC 17.01 sua sponte.

---

[7] The record shows the following line of questioning:
"Q. What did he do?
"A. He stuck his hand down my pants.
"Q. And did he do anything else?
"A. Yes.
"Q. What else did he do?
"A. He stuck his finger inside my vagina.
". . . . . . . . . . . . . . . .

The judgment is affirmed.

Anderson, P. J., and Channell, J., concurred.

---

"Q. Drawing your attention to this period of time being May of 1985, did this occurrence of him touching your vagina happen more than once?"
"A. Yes.
"Q. Do you know when the next to the last time took place?
"A. I think a couple of weeks before that."
Additionally, she alleged that both incidents took place in defendant's bedroom.