Filed 6/5/13  P. v. Cabrera CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B239552 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA066657) |
| v. | |
| HUGO ELISEO CABRERA, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

The opinion issued on May 24, 2013, is hereby modified as follows.

On page 11, the last sentence in the first paragraph is replaced with the following sentence:  Accordingly, we reduce count 2 to a violation of section 289, subdivision (j).

This modification requires no change in the judgment.


MALLANO, P. J.                    CHANEY, J.

Filed 5/24/13  (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HUGO ELISEO CABRERA,<br><br>    Defendant and Appellant. | B239552<br><br>(Los Angeles County<br>Super. Ct. No. NA066657) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gary J. Ferrari, Judge.  Modified and affirmed with directions.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Blythe J. Leszkay, Supervising Deputy Attorney General, and Toni R. Johns Estaville, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Hugo Eliseo Cabrera appeals from the judgment entered following a jury trial in which he was convicted of two counts of aggravated sexual assault on a child under the age of 14 (Pen. Code, § 269, subd. (a); undesignated statutory references are to the Penal Code), one of which was based upon rape in violation of section 261, subdivision (a)(2), and the other upon sexual penetration, in violation of section 289, subdivision (a); one count of committing a lewd act on a child (§ 288, subd. (a)); and one count of sexual penetration of a child under the age of 14 (§ 289, subd. (j)). Defendant contends that the evidence was insufficient to support his convictions of aggravated sexual assault on a child under the age of 14 and that the trial court erred by failing to give a unanimity instruction. We agree with defendant's sufficiency of evidence contention and reduce his convictions in the those counts and strike the resulting duplicative count 4, which the parties agree was based upon the same act of penetration as count 2.

## BACKGROUND

Count 1 charged defendant with committing an aggravated sexual assault on a child under the age of 14 by committing rape in violation of section 261, subdivision (a)(2) "[o]n or about May 12, 2004." Count 2 charged defendant with committing an aggravated sexual assault on a child under the age of 14 by sexual penetration in violation of section 289, subdivision (a) "[o]n or about May 12, 2004." Count 3 charged defendant with committing a lewd act on a child under the age of 14 in violation of section 288, subdivision (a) "[o]n or between May 1, 2004 and May 31, 2004." Count 4 charged defendant with sexual penetration of a child under the age of 14 in violation of section 289, subdivision (j) "[o]n or between May 1, 2004 and May 31, 2004." Four other counts set forth in the information were dismissed before trial as improperly filed because they exceeded the scope defendant's extradition.

The victim, Maria C., was born in March of 1991. She was 20 at the time of trial in January 2012. She testified that defendant was her "natural" father, although the prosecution's DNA expert later opined that defendant was not Maria's biological father.

3

Maria testified that when she was in the fourth grade, defendant began touching her breasts with his hands and inserting his fingers and penis in her vagina. Maria was 9 and 10 years old in 2000 and 2001 when she was in the fourth grade, but she was not specifically asked and did not testify how old she was when defendant commenced his sexual conduct against her. The conduct always occurred in their home, and it occurred "[o]nce a month probably." Maria never told anyone about it because she was embarrassed. Later during her testimony, the prosecutor asked Maria again why she never told anyone, and Maria said, "Because he told me not to." Years later, Maria told Los Angeles Police Department Detective Charles Martin that she tried "to inform her mother when it first began about the touching initially and her father, Hugo, convinced the mother that she was dreaming, so she didn't feel her mother was believing her, so she never tried to tell her any more."

When Maria was in the fifth grade, defendant went away for two years. (Although not disclosed to the jury, defendant was serving a prison term for spousal abuse.) The parties stipulated that from 2002 to early March 2004, defendant could not contact Maria and had no access to her.

In March of 2004, when Maria was in the seventh grade and 13 years old, defendant returned home. "Probably right away," he resumed molesting her in the "same molestation pattern that he had done before he went away." He touched her breasts, "raped" her, and "insert[ed] his finger inside" her. This occurred about once a month. Maria became pregnant and, after nine months of pregnancy, she gave birth to her daughter M. on February 7, 2005. Maria testified that defendant was M.'s father.

Around December of 2004, Maria's pregnancy began to show. Her mother took her to a physician, who confirmed that Maria was pregnant and told Maria's mother. Maria told her mother that she had been raped in a van by a stranger. Defendant gave her the "idea to say someone else had done it." Maria repeated this story to Detective Martin, who began investigating it in January of 2005 and concluded it was false. When Martin

4

confronted Maria with his conclusion, she refused to speak with him for a time. Martin collected DNA samples from defendant, Maria, and Maria's two brothers. Maria subsequently told Martin that one of her seventh grade classmates was responsible. Martin asked her to point out the classmate in her school yearbook, and Maria selected someone. Martin interviewed the boy, who did not know Maria, but voluntarily provided a DNA sample. After M. was born, Martin collected a DNA sample from her also.

Before M. was born, Maria told defendant that she did not want to continue lying. Defendant left home and Maria did not see him again until the preliminary hearing. After M.'s birth, Maria told Martin that defendant was M.'s father, and Martin learned that defendant had left soon after giving a DNA sample. Defendant was extradited from Guatemala in 2011.

Prosecution DNA expert Catherine Leisy testified that she analyzed all of the DNA samples to determine M.'s paternity. Defendant could not be excluded as M.'s father, but all of the other males were excluded.

Defendant presented no affirmative evidence.

The jury convicted defendant of aggravated sexual assault on a child under the age of 14 by rape, aggravated sexual assault on a child under the age of 14 by sexual penetration, commission of a lewd act on a child under the age of 14, and sexual penetration of a child under the age of 14. Defendant admitted a prior prison term enhancement allegation (§ 667.5, subd. (b)). The court sentenced defendant to consecutive terms of 15 years to life in prison for each of the two aggravated sexual assault convictions, a consecutive term of 8 years for the lewd act conviction, a subordinate consecutive term of 2 years for the sexual penetration conviction, and a 1-year consecutive term for the prior prison term enhancement, for a total term of 41 years to life. The trial court did not award defendant any presentence conduct credits, but corrected this error upon defendant's request during the pendency of this appeal.

## DISCUSSION

### 1. Sufficiency of evidence

Counts 1 and 2 (aggravated sexual assault of a child under 14 based upon rape and sexual penetration, respectively) required proof that the act was "accomplished against [Maria's] will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on [herself] or another" person. (§ 261, subd. (a)(2); § 269, subds. (a)(1), (a)(5); § 289, former subd. (a)(1), now subd. (a)(1)(A).) In her arguments to the jury, the prosecutor relied solely upon duress, and defendant contends there was insufficient evidence of duress to support the jury's verdicts on counts 1 and 2.

To resolve this issue, we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable jury could find guilt beyond a reasonable doubt. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) We presume the existence of every fact supporting the judgment that the jury could reasonably deduce from the evidence and make all reasonable inferences that support the judgment. (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Catlin* (2001) 26 Cal.4th 81, 139.) A reasonable inference may not be based solely upon suspicion, imagination, speculation, supposition, surmise, conjecture, or guess work. (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

"Duress" in the context of aggravated sexual assault based upon rape is statutorily defined: "As used in this section, 'duress' means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress." (§ 261, subd. (b).) For purposes of aggravated sexual assault based upon sexual penetration "duress" has a nearly identical meaning: "'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities

6

to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.'" (*People v. Leal* (2004) 33 Cal.4th 999, 1004, italics omitted.) The inclusion of "hardship" in the latter definition of duress is of no consequence in this case, and we can treat duress as if it were identically defined for both counts 1 and 2.

"'[D]uress involves psychological coercion. Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. . . . . "Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim" [are] relevant to the existence of duress.'" (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319–1320.) "'Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.'" (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.) But "'"[p]sychological coercion" without more does not establish duress. At a minimum there must be an implied threat of "force, violence, danger, hardship or retribution."'" (*Espinoza*, at p. 1321.) "Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat . . . .'" (*Ibid*.) But duress is "objective in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51 Cal.4th 229, 246.)

The jury instructions given in this case defined duress in the context of count 1 (aggravated sexual assault based upon rape) as follows: "'Duress' means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which she would not otherwise have performed, or acquiesce in an act to which she otherwise would not have submitted. The total circumstances, including but not limited to the age of the alleged victim, her relationship to the perpetrator defendant, threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that

7

revealing the perpetrator's conduct would result in jeopardizing the safety of the victim or the victim's family, are factors to consider in appraising the existence of the duress." (CALJIC No. 10.00.)  For purposes of count 2 (aggravated sexual assault based upon sexual penetration), the court instructed, "'Duress' means a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which she would not otherwise have performed, or acquiesce in an act to which she otherwise would not have submitted.  The total circumstances, including the age of the alleged victim, and her relationship to the defendant, are factors to consider in appraising the existence of the duress."  (CALJIC No. 10.51.)

In her arguments to the jury regarding duress, prosecutor Carol Rose stated, "I'm making it the easiest for you.  Duress is such a low standard . . . ."  After quoting CALJIC No. 10.00, the prosecutor continued, "He's her daddy.  Now, apparently she doesn't know that he's not her biological father.  Probably a very common thing.  But this is a 42 year old and in fact he is—when she's 10, what is he, 41.  She's 10.  If he's—2002—2001, he's 40 and turns 41 when he starts raping her and she is in that stuck mode now and she's just 10 years old.  [¶]  So, you look at the age of the victim and her relationship or threats or physically controlling or warnings to the victim about revealing the rape.  She knows what it will do to the family.  What's she, 13?"  With respect to count 2, the prosecutor argued, "Got duress here."  She then argued, regarding lack of consent, "You think that 10 year old positively cooperated with her dad?  . . .  And why did it happen? We asked her, 'Why didn't you tell anyone?'  [¶]  'He's my father.'  [¶]  Okay.  'Act freely and voluntarily and have knowledge of the nature of the act.'  [¶]  Did she have as a 10 year old knowledge when he's rubbing her breasts and sticking his finger in her vagina?"

Defense counsel argued that there was no evidence of force, violence, duress, menace, or fear of immediate and unlawful injury, then argued, "They are assuming that because you know that she was young, that she must have felt or there must have been

8

force or violence or duress or menace or fear of immediate and unlawful injury. You're not allowed to assume evidence that didn't come in."

In her rebuttal, the prosecutor argued, "[I]t was accomplished by duress, he was able to do it by duress and duress is acquiescing—it's an implied threat of force, it doesn't have to be force. And she bled, even if that was the first time, that's certainly a threat that it's going to hurt. And just acquiescing." The prosecutor further argued, "Using your common sense when we're talking about duress here now. Let's talk about duress. A 10-year-old child would not be expected nor able to stand up to her father or at least a man she believed was her father. Once she's pregnant, humiliation is even greater because now everyone is going to know that her mother's husband . . . is having sex with her all this time."

Viewing the entire record in the light most favorable to the judgment, we conclude that there is not substantial evidence of duress to support the convictions in counts 1 and 2. These charges were based upon conduct occurring when Maria was 13, not 10, as the prosecutor repeatedly argued. Although defendant's improper sexual conduct toward Maria began when she was in the fourth grade, when she was 9 or 10, it stopped when she was in the fifth grade because defendant went away to prison for two years, and it did not resume until he returned in March of 2004, when she was 13. Maria's young age and size may have been factors that, in addition to other circumstances, would have supported a finding of duress if the charges were based upon defendant's conduct in 2000 or 2001, or perhaps even if the conduct had continued unabated since that time through the date of the charges. But these factors and defendant's paternal relationship with Maria were insufficient to show that defendant used duress to commit the charged offenses on May 12, 2004, when Maria was 13 and defendant had been out of the house for two years. The prosecutor's questioning and Maria's testimony were extremely cursory and conclusory. She was never asked and never testified that she feared defendant or that his conduct placed her in fear. She was never asked and never testified about the circumstances surrounding the sexual acts. There was no evidence defendant attempted

9

physically to control Maria's movements immediately preceding or during the May 12 incident, or during any prior incident. There was no evidence that defendant ever made any express threats of any sort, neither threats that coerced Maria to perform or acquiesce in the sexual activity, nor even threats of adverse consequences that would result if she told anyone about defendant's conduct. There was no evidence of conduct by defendant that could be deemed to be an implied threat of force, violence, danger, retribution, or hardship. There was no evidence that defendant ignored a request to stop or complaint of pain (or that any such request or complaint was made), or overcame an attempt by Maria to get away from him. Nor was there any evidence that defendant ever used physical force to punish Maria in other contexts or that she feared him because of force he had used on her or anyone else. In short, the prosecutor presented minimal and conclusory evidence, falling so far short of substantial evidence that we cannot conclude that a reasonable jury could have found guilt beyond a reasonable doubt.

Although defendant forfeited any claim of prosecutorial misconduct by failing to object in the trial court, we note that the prosecutor's arguments may well have misled the jury to focus on Maria's age at the time defendant began molesting her, not at the time of the charged offenses three or four years later. In addition, the prosecutor argued that "[d]uress is such a low standard" and "duress is acquiescing." The prosecutor also incorrectly argued that Maria testified she bled and used this matter from outside the record to make a circular argument that duress could be found because bleeding was "an implied threat that it's going to hurt."

Rather than simply reversing defendant's convictions, this court has the power and authority to modify the judgment to reflect conviction of a lesser, necessarily included offense. (§§ 1181, subd. 6, 1260; *People v. Jackson* (2000) 77 Cal.App.4th 574, 580.) An offense is necessarily included in another if either the statutory elements of the greater offense or the facts alleged in the accusatory pleading include all of the elements of the lesser offense, so that the greater offense cannot be committed without also committing the lesser. (*People v. Bailey* (2012) 54 Cal.4th 740, 748.) Either the statutory elements

10

test or the accusatory pleading test may be applied in the context of modifying a judgment due to insufficiency of evidence.  (*Ibid.*)

In response to our request for briefing on how we should modify defendant's convictions, defendant argued that counts 1 and 2 should be reduced to violations of section 289, subdivision (h), sexual penetration of a person under the age of 18.  The Attorney General argued that count 2 could be reduced to a violation of section 289, subdivisions (h) or (j) [sexual penetration of a person under the age of 14 by a defendant who is more than 10 years older than the victim], but argued that count 1 could not because "sexual penetration" is defined by section 289 as penetration with "any foreign object, substance, instrument, or device, or by any unknown object"; a "foreign object, substance, instrument, or device" does not include "a sexual organ"; and an "unknown object" only includes "a penis, when it is not known whether penetration was by a penis or by a foreign object, substance, instrument, or device, or by any other part of the body." (§ 289, subd. (k)(1)–(3).)  The Attorney General argues that count 1 could be reduced to a violation of section 261.5, subdivision (c), which, in 2004, provided as follows:  "Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony, and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison."

Count 1 charged aggravated sexual assault of a child under the age of 14 by a defendant who is more than 10 years older than the victim by means of a violation of section 261, subdivision (a)(2).  (§ 269, subd. (a)(1).)  Section 261, subdivision (a) provides that "[r]ape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:  [¶]  . . .  [¶] (2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." Applying the accusatory pleadings test, we agree with the Attorney General that a violation of section 261.5, subdivision (c) is necessarily included within a violation of

11

aggravated sexual assault of a child under the age of 14 by forcible rape. Accordingly, we reduce count 1 to a violation of section 261.5, subdivision (c).

Count 2 charged aggravated sexual assault of a child under the age of 14 by a defendant who is more than 10 years older than the victim by means of a violation of section 289, former subdivision (a)(1) (now subd. (a)(1)(A)). (§ 269, subd. (a)(5).) In 2004, section 289, subdivision (a)(1) provided, "Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years." Applying the accusatory pleadings test, we agree with the Attorney General that a violation of either section 289, subdivision (h) or subdivision (j) is necessarily included within a violation of aggravated sexual assault of a child under the age of 14 by sexual penetration, but we conclude a violation of section 289, subdivision (j) is a more apt included offense because the age specifications mirror those in section 269, as it existed in 2004. Section 289, subdivision (j) provides, "Any person who participates in an act of sexual penetration with another person who is under 14 years of age and who is more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years." In contrast, section 289, subdivision (h) provides, "Except as provided in Section 288, any person who participates in an act of sexual penetration with another person who is under 18 years of age shall be punished by imprisonment in the state prison or in the county jail for a period of not more than one year." Accordingly, we reduce count 1 to a violation of section 289, subdivision (j).

## 2. Duplicative counts

We asked the parties to address whether defendant was properly convicted and sentenced for two counts pertaining to sexual penetration (counts 2 and 4), given evidence and the time periods alleged in the information. In her letter brief, the Attorney General conceded that "counts 2 and 4 are based on the same act of digital penetration."

12

Although the parties disagreed as to whether defendant properly stood convicted of two counts based upon the same act, our modification of count 2 to a violation of section 289, subdivision (j) simplifies matters. With this modification, counts 2 and 4 are identical convictions for a single act and one must be stricken. Accordingly, we strike count 4.

**3.     Unanimity instruction**

Defendant contends that the trial court erred by failing to give a unanimity instruction, and that this potentially affected counts 2 through 4. Given our disposition of count 4, we address the absence of a unanimity instruction with respect to counts 2 and 3.

A trial court must instruct jurors that they must unanimously agree that defendant committed the same specific criminal act "'"when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*People v. Russo* (2001) 25 Cal.4th 1124, 1135.) Where a unanimity instruction is required it must be given sua sponte. (*People v. Curry* (2007) 158 Cal.App.4th 766, 783.)

"A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged. . . . [T]he possibility of disagreement exists where the defendant is accused of a number of unrelated incidents, such as alleged rapes at different times or places, leaving the jurors free to believe different parts of the testimony and yet convict the defendant. . . . Disagreement may also exist where the defendant offers a defense which could be accepted or rejected as to some but not all of the acts." (*People v. Gonzalez* (1983) 141 Cal.App.3d 786, 791–792, disapproved on another ground in *People v. Kurtzman* (1988) 46 Cal.3d 322, 330.)

13

"In order for the unanimity instruction to be significant, there must be evidence from which reasonable jurors could *both* accept *and* reject the occurrence of at least the same number of acts as there are charged crimes." (*People v. Schultz* (1987) 192 Cal.App.3d 535, 540.) Where the record provides no rational basis for the jury to distinguish between the various acts, by way of argument or evidence, and the jury must have believed beyond a reasonable doubt that defendant committed all of the acts if he committed any of them, the failure to give a unanimity instruction is harmless. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853 (*Thompson*).)

The evidence supported the commission of three distinct criminal acts against Maria during the time periods specified in the charges: sexual intercourse, touching her breasts, and digital sexual penetration. Maria's testimony was comparable with respect to all three acts and defendant's defense did not differ with respect to the various acts. Thus, there was no rational basis for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all of the acts if he committed any of them. Accordingly, even if the trial court should have given a unanimity instruction, its failure to do so was harmless beyond a reasonable doubt. (*People v. Wolfe* (2003) 114 Cal.App.4th 177, 186–188; *Thompson*, *supra*, 36 Cal.App.4th at p. 853.)

## DISPOSITION

The judgment is modified by (1) reducing count 1 to a conviction of violating Penal Code section 261.5, subdivision (c); (2) reducing count 2 to a conviction of violating Penal Code section 289, subdivision (j); and (3) striking count 4. The judgment is otherwise affirmed, and the cause is remanded for resentencing.

NOT TO BE PUBLISHED.


                                                                MALLANO, P. J.

We concur:


CHANEY, J.


JOHNSON, J.