Rel: May 5, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

————————————————

## CR-2022-0721

————————————————

## Charles Edward Colburn

**v.**

## State of Alabama

## Appeal from Montgomery Circuit Court
### (CC-19-154)

MINOR, Judge.

A jury convicted Charles Edward Colburn of two counts of first-degree rape, see § 13A-6-61, Ala. Code 1975, and two counts of sexual abuse of a child less than 12 years old, see § 13A-6-69.1, Ala. Code 1975, and the circuit court sentenced him, as a habitual felony offender, to life

imprisonment without the possibility of parole for each conviction. We consider the following issues: (1) whether the circuit court correctly instructed the jury on election and unanimity; (2) whether the circuit court correctly denied Colburn's motions for a mistrial; (3) whether the circuit court correctly refused to instruct the jury that "Colburn did not have an opportunity to cross-examine T.M. or [J.W.] when the child protect videos were played"; (4) whether "[t]he cumulative effect of the errors in this case require reversal"; (5) whether Colburn's life-imprisonment-without-the-possibility-of-parole sentences for his convictions of sexual abuse of a child less than 12 years old are illegal; and (6) whether the circuit court should have imposed periods of post-release supervision on Colburn's life-imprisonment-without-the-possibility-of-parole sentences for his first-degree-rape convictions. We affirm Colburn's convictions and sentences for first-degree rape. We also affirm Colburn's convictions for two counts of sexual abuse of a child less than 12 years old, but we remand this case to the circuit court for that court to resentence Colburn on those convictions.

FACTS

Because Colburn does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. Between 2017 and 2018, the victims J.W. and T.M., who were both under the age of 12 years old at the time, visited J.W.'s cousin's house to play and have sleepovers. J.W.'s cousin lived with her father, Colburn, in Montgomery.

J.W., who was 12 at the time of the trial, testified that Colburn got "on top of [her], [and] put his penis inside of [her]" and that this happened "[m]ore than once." (R. 99-101, 109.) J.W. also testified that Colburn "touched [her] boobs." (R. 101.) Colburn told J.W. not to tell or "[h]e would get in trouble." (R. 102.) J.W. told no one about the abuse at first "[b]ecause [she] was scared" and "thought [she] was going to get in trouble" if she told. (R. 103.)

T.M., who was 15 at the time of trial, testified that when she was 10 or 11 years old, Colburn touched her "chest, [her] private parts, [her] back private parts," and inside her clothes. (R. 122.) T.M. testified that he "put his private parts inside of [her]" and would say, "I like it." (R. 123, 133-34.) T.M. testified that this happened "[e]very weekend" except on the weekends that J.W. was there. (R. 123-24.) T.M. testified that Colburn would give her money on the days after the abuse and told her

3

it was "[f]or what [she] did last night." (R. 125, 138-39, 141.) T.M. testified that Colburn put lotion on himself and T.M.'s "private part." (R. 126, 134.) T.M. testified that she did not disclose the abuse at first because Colburn "said he would do something to [her]" and he told T.M. that he "had a knife." (R. 129.) T.M. testified that she stopped going to Colburn's house after she told her mother about the sexual abuse.

Kirstin Byrd, a forensic interviewer at Child Protect, a children's advocacy center, interviewed both J.W. and T.M.[1] During the interviews, both J.W. and T.M. talked about Colburn "touching and groping their breasts, the vagina and anus, then they both gave specific incidents of what took place." (R. 279.) J.W. discussed how Colburn "pulled her clothes down, how he put grease on his penis, how he tried to insert [it] in to her." (R. 279.) T.M. also discussed Colburn "groping her vagina, breasts and anus" and mentioned a "specific incident" of groping and sexual assault. (R. 280.)

Colburn did not testify on his own behalf, but he did give an interview to police, which the State put in evidence. Colburn denied the

_____

[1]Recordings of the interviews were admitted and played at trial. See State's Exhibits 3 and 4.

allegations and stated that he thought that his ex-wife might have told the girls to make the allegations because he had been awarded full custody of their daughter.

As noted, the jury found Colburn guilty of two counts of first-degree rape and two counts of sexual abuse of a child less than 12 years old. Colburn timely appealed.

## I. UNANIMITY INSTRUCTION

Colburn argues that the circuit court incorrectly instructed the jury about "election and unanimity." (Colburn's brief, p. 18.) Colburn argues that the circuit court did not instruct the jury that it must unanimously find that he committed all the instances of sexual abuse against J.W. and T.M. Colburn also argues that the circuit court's instruction was erroneous because it did not refer to rape.

During a discussion about jury charges, the circuit court noted that Colburn "is asking that because I'm not making the State elect a specific incident … that they must unanimously agree that the same act was committed or [that] all of the acts were committed." (R. 343-44.) The circuit court then suggested the following instruction: "[Y]ou've had an opportunity to hear testimony from the witness stand, you've heard from

a number of witnesses, evidence has been admitted. You all must unanimously agree that a specific incident of sexual abuse occurred." (R. 349.) Colburn again objected, asserting that the court had to instruct the jury that it must unanimously agree that all the alleged incidents occurred. Later, during the jury charge, the circuit court instructed as follows: "[The verdict] must be unanimous. And as to the specific charge of sexual abuse, you must all agree unanimously that a specific incident of sexual abuse occurred. Okay. That has to be a unanimous decision." (R. 362-63.) Colburn renewed his objection.

Colburn's indictments did not list specific instances of sexual abuse.

"In R.A.S. [v. State, 718 So. 2d 117 (Ala. 1998)], the Alabama Supreme Court held:

"'In cases, such as this one, that involve both generic and specific evidence, where evidence of multiple culpable acts is adduced to prove a single charged offense, jury unanimity must be protected. Therefore, in such a case, the defendant is entitled either to have the State elect the single act upon which it is relying for a conviction or to have the court give a specific unanimity instruction. If the State chooses not to elect the specific act, the trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, thereby assuring a unanimous verdict on one criminal act. Cf. State v. Petrich, 101 Wash. 2d 566, 571, 683 P.2d 173, 178 (1984)

6

(where, in a factually similar case, the Washington Supreme Court required either that the State make an election or that the trial judge provide an unanimity instruction to the jury). See also, People v. Aldrich, 849 P.2d 821, 825 (Colo. App. 1992) (where the court held that the defendant's right to a unanimous jury was ensured because, (1) "although the trial court denied the defendant's pre-trial motion to compel an election, at the close of the trial, the trial court did compel the prosecutor to elect the specific incidents of conduct upon which it relied," (2) "the jury ultimately was instructed as to the specific incidents upon which the charges were based," and (3) the jury "was also given a unanimity instruction" (emphasis omitted)).'

"R.A.S., 718 So. 2d at 122 (footnote omitted)."

Williams v. State, [Ms. CR-2022-0543, Feb. 10, 2023] ___ So. 3d ___, ___ (Ala. Crim. App. 2023).

J.W. and T.M. both testified that they often visited J.W.'s uncle Colburn's house and that while there, Colburn sexually abused them. J.W. testified that Colburn raped her "[m]ore than once" and "touched [her] boobs." T.M. testified that Colburn raped her "[e]very weekend" except on the weekends that J.W. was there. Considering that evidence, the circuit court instructed the jury: "[The verdict] must be unanimous. And as to the specific charge of sexual abuse, you must all agree unanimously that a specific incident of sexual abuse occurred. Okay.

7

That has to be a unanimous decision." (R. 362-63.) The State concedes that unanimity instruction was required, but it argues that the circuit court's instruction was sufficient. (State's brief, pp. 13-15.) Under the circumstances, we question whether this unanimity instruction was sufficient. See, e.g., Shouldis v. State, 38 So. 3d 753, 755, 761 (Ala. Crim. App. 2008) (holding that a victim's generic testimony involving a resident abuser required a "unanimity instruction inform[ing] the jury that each juror must determine that 'all' the alleged incidents of sexual abuse occurred").

Regardless whether the instruction was sufficient, however, Colburn has no right to relief. As this Court held in R.L.G. v. State, 712 So. 2d 348, 368-69 (Ala. Crim. App. 1997):

> "'[S]ome cases found harmless any error in failing either to select specific offenses or [to] give a unanimity instruction, if the record indicated the jury resolved the basic credibility dispute against defendant and would have convicted the defendant of any of the various offenses shown by the evidence to have been committed.' [People v. Jones,] 51 Cal. 3d [294] at 307, 270 Cal. Rptr. [611] at 617, 792 P.2d [643] at 649 [(1990)] (emphasis in original; citing People v. Moore, 211 Cal. App. 3d 1400, 1415–16, 260 Cal. Rptr. 134 (1989); People v. Winkle, 206 Cal. App. 3d at 828–30, 253 Cal. Rptr. 726; People v. Schultz, 192 Cal. App. 3d 535, 539–40, 237 Cal. Rptr. 513 (1987); People v. Deletto, 147 Cal. App. 3d 458, 466, 470–73 & n. 10, 195 Cal. Rptr. 233 (1983), cert. denied, 466 U.S. 952, 104 S. Ct. 2156, 80 L. Ed. 2d 542 (1984)). For example, in

8

Winkle, the victim testified that the defendant, her uncle, had molested her regularly each week; the prosecution made no election and no unanimity instruction was given. The court concluded that no prejudice resulted. Because the defendant made only a weak attempt to assert an alibi defense, the ultimate question for the jury was the defendant's credibility and the verdict necessarily implied that the jury unanimously believed the victim.

"....

"As we have already noted, the present case hinged solely on credibility, i.e., the defense was designed to show that none of the incidents occurred. There was absolutely no rational basis by which the jury could have found that the appellant committed one of the incidents but not the others. Any juror believing that one incident took place would have unquestionably believed that all the incidents took place. Thus, we can say that no rational juror could have had a reasonable doubt as to any of the incidents alleged. By returning guilty verdicts, the jurors must necessarily have unanimously rejected the appellant's defense and, by believing the victim, unanimously found that all the incidents occurred. We must conclude that, under these circumstances, the jury in fact unanimously agreed on the act forming the basis of the verdicts. Moreover, the appellant's rights to notice of the charges against him, to the opportunity to formulate a defense, and to be convicted only upon sufficient proof were not injuriously affected. We conclude to a certainty that, upon the peculiar circumstances of this case, the trial court's failure to give a specific unanimity instruction, necessitated by the prosecution's inability to elect, was harmless error. Compare Ex parte Curry, 471 So. 2d 476, 479 (Ala. 1984) (in a case not addressing an election issue, where the jury was not instructed generally that it must reach a unanimous verdict in order to convict or acquit, the court stated that 'the unanimous-verdict is so fundamental to the rights of the defendant that an omission to charge on that requirement

9

must necessarily be prejudicial' because 'one member of the jury could [have] alter [ed] the ultimate verdict had they been instructed')."

Even if the circuit court's instruction was insufficient, that error was harmless. "[T]he jurors must necessarily have unanimously rejected [Colburn's] defense and, by believing [J.W. and T.M.], unanimously found that all the incidents occurred." Id. at 369. Thus, Colburn is due no relief on this issue.

## II. MOTIONS FOR A MISTRIAL

Colburn argues that the circuit court erred by denying his two motions for a mistrial. Colburn made the motions following these instances: (1) testimony from an investigator that Colburn had blown marijuana smoke in his daughter's face; and (2) the trial judge's alleged emotional reaction to the videos depicting J.W.'s and T.M.'s disclosures.

> "'A mistrial is a drastic remedy that should be used sparingly and only to prevent manifest injustice.' Hammonds v. State, 777 So. 2d 750, 767 (Ala. Crim. App. 1999). '"A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted."' Berryhill v. State, 726 So. 2d 297, 302 (Ala. Crim. App. 1998) (quoting Dixon v. State, 476 So. 2d 1236, 1240 (Ala. Crim. App. 1985))."

Lewis v. State, [Ms. CR-19-0567, Sept. 3, 2021] ___ So. 3d ___, ___ (Ala. Crim. App. 2021).

## A. FIRST MOTION

Before trial, Colburn filed a "motion to redact statement" to prohibit any statements he made to police to the effect that he had provided marijuana to his daughter based "[u]pon information and belief, the State will move to dismiss the [charge of chemical endangerment of a child] prior to trial."[2] (C. 217.) At a motion hearing, the circuit court stated that "the general statements about [Colburn's] drug use … I don't think [are] due to come in." (C. 65.)

After the State's witness Robert Downs testified that his investigation started with "a report from a mother who claimed that her daughter disclosed that her father blew marijuana in her—in her—," Colburn moved for a mistrial. (R. 78.) As the motion was being discussed, defense counsel alleged that "[the jurors] could hear everything that was happening in the back, so now they're even more prejudiced by it." (R.

_____

[2]The State nol-prossed Colburn's chemical-endangerment-of-a-child charge.

11

80.) The circuit court denied the motion, and issued the following curative

instruction:

> "THE COURT All right. We're going to bring the witness back out. I'll be honest with you, I didn't even really hear the question and answer. You may or may not have either. But you're to disregard any testimony that's been given. We're going to start over with this witness, and so I want to be clear that you are to—we're starting with this witness, disregard anything that's been said up until this point. And Mr. Downs has been sworn in, so I'm going to turn it over to State's counsel and we'll get started with the questioning."

(R. 86-87.)

Downs's testimony that "her father blew marijuana in her—in her,"

was not, as the circuit court stated, "so prejudicial to cause a mistrial."

(R. 82.) After the State made it clear that it would nol-pros the charge of

chemical endangerment, Colburn's "drug use" was not at issue and was

mentioned only to show how DHR had gotten involved in the sexual-

abuse cases. Even so, the circuit court's instruction for the jury to

disregard Downs's testimony cured any error. See Pettibone v. State, 91

So. 3d 94, 115 (Ala. Crim. App. 2011) ("[J]urors are presumed to follow

the trial court's instructions."). Colburn's argument that the jury heard

any discussions between the parties or with the circuit court is no more

than a bare allegation. Thus, Colburn is due no relief on this issue.

## B. SECOND MOTION

After the State played the Child-Protect videos showing J.W. and T.M., Colburn moved for mistrial, arguing that the trial judge's "emotional reactions" to the videos might have "influenced the jury." (R. 270.) Colburn's argument, however, is not preserved for appellate review. The record shows that Colburn did not move for a mistrial after the videos were played, instead waiting until the next day after the proceedings had resumed. See Culver v. State, 22 So. 3d 499, 518 (Ala. Crim. App. 2008) ("To be timely, a motion for a mistrial must be made immediately after the grounds alleged to warrant the mistrial become apparent."). Thus, Colburn is due no relief on this issue.

## III. REFUSAL TO GIVE JURY INSTRUCTION CONCERNING THE VIDEOS

Colburn argues that the circuit court erred by refusing to instruct the jury that "Colburn did not have an opportunity to cross-examine T.M. or J.W. when the [C]hild [P]rotect videos were played." (Colburn's brief, pp. 43-44.) Colburn concedes that he did not preserve this issue for appellate review. See P.D.F. v. State, 758 So. 2d 1118, 1120 (Ala. Crim. App. 1999) ("P.D.F. failed to preserve this issue for appellate review because he failed to request the instruction and he failed to object to the

trial court's failure to give the instruction."). Thus, Colburn is due no relief on this issue.

## IV. CUMULATIVE ERROR

Colburn argues that "[t]he cumulative effect of the errors in this case require reversal." (Colburn's brief, p. 45.)

> "[T]he cumulative-error rule is as follows: '[W]hile, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, if the accumulated errors have "probably injuriously affected substantial rights of the parties," then the cumulative effect of the errors may require reversal.' Ex parte Woods, 789 So. 2d 941, 942 n. 1 (Ala. 2001) (quoting Rule 45, Ala. R. App. P.)."

Brownfield v. State, 44 So. 3d 1, 33 (Ala. Crim. App. 2007).

No cumulative-error analysis is required. The only error, if any, was with the circuit court's jury instruction on unanimity, and we have said that that error was harmless. In other words, one harmless error cannot be cumulative error. Thus, Colburn is due no relief on this issue.

## V. SENTENCES FOR SEXUAL ABUSE OF A CHILD LESS THAN 12 YEARS OLD

Colburn argues that his life-imprisonment-without-parole sentences for his convictions of sexual abuse of a child less than 12 years old are illegal, and that, "[t]herefore, this Court should reverse the trial

14

court and remand this case for a new sentencing hearing." (Colburn's brief, pp. 44-45.)

Colburn was convicted of two counts of first-degree rape (Class A felonies) and two counts of sexual abuse of a child less than 12 years old (Class B felonies). See §§ 13A-6-61(b), 13A-6-69.1(b), Ala. Code 1975. The State notified the circuit court of its intent to invoke the Habitual Felony Offender Act, § 13A-5-9, Ala. Code 1975, relying on Colburn's nine prior felony convictions consisting of both Class B and Class C felonies. (C. 138-40.)

Section 13A-5-9(c) provides:

> "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies that are Class A, Class B, or Class C felonies and after such convictions has committed another Class A, Class B, or Class C felony, he or she must be punished as follows:
>
> > "(1) On conviction of a Class C felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.
> >
> > "(2) On conviction of a Class B felony, he or she must be punished by imprisonment for life or any term of not less than 20 years.
> >
> > "(3) On conviction of a Class A felony, where the defendant has no prior convictions for any Class A felony, he or she must be punished by

15

imprisonment for life or life without the possibility of parole, in the discretion of the trial court.

"(4) On conviction of a Class A felony, where the defendant has one or more prior convictions for any Class A felony, he or she must be punished by imprisonment for life without the possibility of parole."

Under § 13A-5-9(c)(2), Colburn, on his convictions for sexual abuse of a child less than 12 years old, should have been sentenced to "life or any term of not less than 20 years." Thus, Colburn's sentences of life imprisonment without the possibility of parole are illegal, and we must remand this cause for the circuit court to resentence Colburn on those convictions.[3]

## VI. POST-RELEASE SUPERVISION ON COLBURN'S SENTENCES FOR FIRST-DEGREE RAPE

Under § 13A-5-6(c), for a Class A felony sex offense involving a child, the circuit court is to impose "an additional penalty of not less than 10 years of post-release supervision to be served upon the defendant's

---

[3]Because the sentencing error could not have affected Colburn's convictions, we did not consider it in the cumulative-error analysis. See Issue IV. And we reject the State's argument that the sentencing error is harmless. See, e.g., Jackson v. State, 317 So. 3d 1018 (Ala. Crim. App. 2020).

release from incarceration." § 13A-5-6(c), Ala. Code 1975. That subsection provides:

> "In addition to any penalties heretofore or hereafter provided by law, in all cases where an offender is designated as a sexually violent predator pursuant to Section 15-20A-19, or where an offender is convicted of a Class A felony sex offense involving a child as defined in Section 15-20A-4,[4] and is sentenced to a county jail or the Alabama Department of Corrections, the sentencing judge shall impose an additional penalty of not less than 10 years of post-release supervision to be served upon the defendant's release from incarceration."

See also Bishop v. State, 344 So. 3d 906, 915 (Ala. Crim. App. 2021).

We note that the circuit court did not impose periods of post-release supervision on Colburn's convictions for first-degree rape. Although neither party raises the issue, we take this opportunity to clarify that the circuit court was not required to do so. By its terms, § 13A-5-6(c) requires post-release supervision only "upon the defendant's release from incarceration." Because the circuit court sentenced Colburn to life imprisonment without the possibility of parole for the first-degree-rape

---

[4]"Sex offense involving a child" is defined as "[a] conviction for any sex offense in which the victim was a child or any offense involving child pornography." § 15-20A-4(27), Ala. Code 1975.

17

convictions, however, Colburn will not be released from prison. Thus, the requirement of an "additional penalty" under § 13A-5-6(c) does not apply.

CONCLUSION

We affirm Colburn's convictions and sentences for first-degree rape. We also affirm Colburn's convictions for two counts of sexual abuse of a child less than 12 years old, but we remand this case to the circuit court with instructions for it to conduct a new sentencing hearing at which Colburn, represented by counsel, will be sentenced in accordance with this opinion. Due return must be filed with this Court no later than 56 days from the date of this opinion. The return to remand must include a transcript of the proceedings conducted on remand and a new sentencing order.

AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Kellum and McCool, JJ., concur. Cole, J., concurs in the result.